UNITED STATES of America,
Plaintiff–Appellee,

v.

Danny SHUNK, Defendant–Appellant.

No. 88–1464.

United States Court of Appeals,
Tenth Circuit.

Aug. 4, 1989.

Brent D. Ward, U.S. Atty., Stewart C. Walz, First Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

**918**

Jay Fitt, Holladay, Utah, for defendant-appellant.

Before McKAY, TACHA and EBEL, Circuit Judges.

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

On March 15, 1988, following a jury trial, the district court entered a judgment of conviction against the defendant, Danny Shunk, for his violation of the terms of 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon. The defendant appeals from the judgment. For the reasons set forth below, we affirm.

From February to December, 1987, the Salt Lake City, Utah Police Department conducted a "sting" operation out of a residence where a police officer posed as an individual who fenced stolen property. All transactions or meetings relevant to the facts of this case were videotaped. The defendant's brother, Timmy Shunk, sold a pistol to the undercover officer on October 16, 1987. At that time, Timmy stated that the pistol belonged to his brother, Ronnie. On November 2, 1987, Timmy returned to the officer and requested a loan. The discussion between Timmy and the officer also included statements to the effect that the defendant, Danny Shunk, had been the actual previous owner of the pistol and that the defendant was dissatisfied with the amount paid by the officer to Timmy. The officer gave Timmy the loan money he had been seeking on the condition that Timmy would arrange for the defendant to meet with the officer for the purpose of settling the dispute regarding the purchase price of the pistol. On November 5, 1987, the defendant and Timmy met with the officer. At this meeting the defendant made statements to the effect that he had owned the weapon for a month-long period prior to its sale. The defendant was indicted approximately one month later.

■ There is no question that the defendant's statements to the officer regarding ownership of the pistol should be characterized as admissions by a party opponent within the definition set forth in Fed.R. Evid. 801(d)(2)(A). As such, the defendant's statements were not hearsay. *Id.* The admissions formed the principal basis upon which the defendant's conviction rests. The parties stipulated to the fact of the defendant's prior felony convictions. No dispute exists as to the pistol's transport in interstate commerce.

On appeal, the defendant basically advances two arguments. The first is that the district court erred in admitting into evidence the videotape of the defendant's admissions prior to the government's establishment of the corpus delicti. (At trial, the jury was shown the videotape of the November 5 meeting prior to the introduction of any evidence concerning the November 2 meeting.) Under this rubric, the defendant claims that his admissions could not be admitted into evidence where the only corroborating evidence as to their trustworthiness is the officer's testimony regarding, and the videotape recordation of, the November 2 meeting between the officer and Timmy. The defendant does not challenge the veracity of the officer's account of the November 2 meeting, rather he attacks the truthfulness of Timmy's statements. The defendant characterizes Timmy's reference to the defendant's ownership of the pistol as inadmissible hearsay which cannot be introduced to corroborate the defendant's admissions. The Defendant's second argument is that even if the videotape of Timmy's November 2 discussion with the officer were admissible, it fails to sufficiently corroborate the defendant's admissions.

■ An analysis of every crime reveals three component parts—(1) the occurrence of the specific kind of injury or loss (as in homicide, a dead person; in arson, a burnt house; in larceny, property missing), (2) somebody's criminality as the source of the loss (in contrast, *e.g.*, to an accident), and (3) the accused's identity as the doer of the crime. Wigmore on Evidence § 2072

(Chadbourn rev. 1978); *accord,* McCormick on Evidence § 145 (3d Ed.1984). The first two of these elements are what constitutes the concept of corpus delicti. *Id.; accord,* C. Torcia, 4 Wharton's Criminal Evidence § 648 (14th Ed.1987). This court has defined the term corpus delicti, at least in the context of the crime of interstate transport of a stolen vehicle, to mean that "extrinsic evidence must establish the commission of the crime by *somebody,* or in other words, that the crime has in fact been committed." *United States v. Charpentier,* 438 F.2d 721, 725 n. 2 (10th Cir.1971) (emphasis in original) (adopting definition set forth in *United States v. Washington,* 69 F.Supp. 143, 146 (D.Md.1946)); *accord,* 29 Am. Jur.2d *Evidence* § 149 (1967) ("[T]he prosecution must establish the actual commission, by someone, of the particular offense charged.") Identification of the accused as the individual who committed the crime is not part of the corpus delicti. *Charpentier,* 438 F.2d at 725.

The defendant relies upon a passage from Wharton's Criminal Evidence for the proposition that the videotape of his admissions could not be shown to the jury prior to the introduction of sufficient competent evidence establishing the corpus delicti of the crime.

> The corpus delicti must be established by evidence independent of any confession or admission and, ordinarily, this must be done before the jury may even be apprised of such a confession or admission.

4 Wharton's Criminal Evidence at § 648.

The defendant's argument is unavailing. The corpus delicti issue is not relevant to this case because we conclude that the concept of corpus delicti has no practical application to the crime of which the defendant was convicted.

"A defendant cannot be convicted solely on the basis of an uncorroborated extrajudicial statement." *United States v. Wolfenbarger,* 696 F.2d 750, 752 (10th Cir.1982) (citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). As it presently exists, the corpus delicti concept has been properly characterized as a "version" of the corroboration requirement for the introduction of extrajudicial statements. *See* Millstein, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule,* 46 Fordham L.Rev. 1205, 1211 (1978). The corroboration rule, as applied in federal courts today, was set forth in *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The rule requires "the government to introduce substantial evidence which would tend to establish the trustworthiness of the statement.... It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Id.* at 93, 75 S.Ct. at 164. The Court differentiated the corroboration rule from the corpus delicti concept when it wrote "the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti." *Id.* The Court elaborated on this standard in *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). It wrote: "[a]ll elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Id.* at 156, 75 S.Ct. at 199.

The requirement that the prosecution demonstrate the existence of the corpus delicti of a crime is "a vestige of a time when brutal methods were commonly used to extract confessions, sometimes to crimes that had not been committed." *United States v. Kerley,* 838 F.2d 932, 939 (7th Cir.1988). Its purpose was to prevent the conviction of an individual on the basis of an unreliable confession. *Id.* at 940. Aside from its use in confession corroboration, the concept of corpus delicti is rarely used in modern law. 46 Fordham L.Rev. at 1212. The concept of corpus delicti has become largely an anachronism. In recent years, several authorities have suggested that the concept has outlived its usefulness. *See* McCormick on Evidence, at § 145 and authorities cited therein. Indeed, the court in *Kerley* has stated that "the corpus delicti rule no longer exists in the federal system." 838 F.2d at 940.

■ The facts of the instant case do not require us to paint with as broad a brush as the court in *Kerley*. We do, however, recognize that the corpus delicti concept is not relevant to a crime such as the present one where there is no tangible injury or loss and the crime cannot be found to have been committed without reference to a specific defendant. *See* Ayling, *Corroborating Confessions: An Empirical Analysis of Legal Safeguards Against False Confessions*, Wis.L.Rev. 1121, 1152 (1984) ("[T]he concept is completely irrelevant where, because of the nature of the crime charged, it is impossible to show that a crime occurred without also implicating a specific defendant.") (footnote omitted). *See also* 46 Fordham L.Rev. at 1212 ("Although the corpus delicti concept normally isolates proof of the identity of the defendant from the other elements of the crime, there is no requirement that this proof of identity be independent from the proof that the crime was committed. All elements may rest on the same foundation of circumstantial evidence, and evidence tending to establish the corpus delicti may often be intertwined with evidence tending to establish defendant's identity. Viewed in this fashion, the barrier interposed by the corpus delicti concept is often artificial.") (footnote omitted).

The Supreme Court encountered the present type of scenario in *Smith v. United States, supra*. In the context of a tax evasion prosecution—a crime in which the identity of the accused is an inseparable element in proving the existence of the crime—the court applied the corroboration rule to the issue of the admissibility of the defendant's extrajudicial statement. The prosecution was not required to demonstrate that the crime had been committed through evidence completely extrinsic to the defendant's extrajudicial statement. The court wrote:

> The corroboration rule, at its inception, served an extremely limited function. In order to convict of serious crimes of violence, then capital offenses, independent proof was required that *someone* had indeed inflicted the violence, the so-called *corpus delicti*. Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession. But in a crime such as tax evasion there is no tangible injury which can be isolated as a *corpus delicti*. As to this crime, it cannot be shown that the crime has been committed without identifying the accused. Thus, we are faced with the choice either of applying the corroboration rule to this offense and affording the accused even greater protection than the rule affords to a defendant in a homicide prosecution or of finding the rule wholly inapplicable because of the nature of the offense, stripping the accused of this guarantee altogether. We choose to apply the [corroboration] rule, with its broader guarantee, to crimes in which there is no tangible *corpus delicti*, [and] where the corroborative evidence must implicate the accused in order to show that a crime has been committed.

348 U.S. at 153–54, 75 S.Ct. at 198 (emphasis in original) (citations omitted) (bracketed language added).

Because the concept of corpus delicti is meaningless in the context of this case but the standard of corroboration is fixed, we will apply the corroboration rule as discussed, *supra*, to the issue of whether the defendant's videotaped admissions were properly admitted into evidence. We hold that the concept of corpus delicti is not applicable to cases such as this where there is no tangible injury or loss and the existence of the crime depends upon the identity and status of the defendant.

■ In two respects the government has demonstrated the existence of sufficient independent evidence that corroborates the defendant's admissions. First, the government introduced the pistol into evidence. The defendant apparently concedes that the pistol is the one sold by Timmy. Second, the government introduced into evidence the testimony regarding, and the videotape recordation of, the remarks made by Timmy which were to the effect that the defendant had owned the pistol. We conclude that the above evidence tended to

establish the trustworthiness of the defendant's admissions.

■ The defendant argues that Timmy's November 2 statements were hearsay and that their introduction into evidence was improper. This contention is incorrect. When Timmy met with the undercover officer on November 2, he indicated that he was acting as the defendant's agent. The defendant, by his statements made on November 5, ratified his agent's prior conduct. Timmy's statements fall within the category of statements offered against a party which are made by the party's agent as described by Fed.R.Evid. 801(d)(2)(D). As such, Timmy's statements are not hearsay. *Id.*

The defendant's challenge to the sufficiency of the evidence is also unavailing. In assessing whether the evidence is sufficient to support the defendant's conviction, we must consider both the direct and circumstantial evidence, including the reasonable inferences that can be drawn, in the light most favorable to the prosecution. *United States v. Taylor,* 832 F.2d 1187, 1192 (10th Cir.1987). We must then determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986).

■ The elements of the crime of possession of a firearm by a convicted felon as described in 18 U.S.C. § 922(g)(1) are as follows:

(1) The defendant was convicted of a felony;

(2) Thereafter the defendant knowingly possessed a firearm; and

(3) The defendant's possession of the firearm was in or affecting commerce.

*See United States v. Dancy,* 861 F.2d 77, 81 (5th Cir.1988). The defendant stipulated to the existence of the first element and does not challenge the government's showing as to the third element. We believe that a reasonable jury could, based upon the defendant's and Timmy's statements,

referred to above, find beyond a reasonable doubt that the defendant knowingly possessed a firearm.

The judgment of conviction is AFFIRMED.