**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Winona CHIMAL, Defendant–Appellant.**

No. 91–2223.

United States Court of Appeals,
Tenth Circuit.

Sept. 24, 1992.

Ralph C. Binford, Deming, N.M., for defendant-appellant.

Robert J. Gorence, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before BALDOCK, SETH and KELLY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant Winona Chimal was charged with eleven counts of embezzlement from an Indian tribe. 18 U.S.C. § 1163. She was convicted on two counts, acquitted on one count, and the district court declared a mistrial on the remaining counts because the jury could not agree. Defendant appeals, raising the following points of error: (1) the government failed to prove a corpus delicti; (2) the trial court erred in allowing the prosecutor to impeach Defendant with her pre-arrest silence; (3) the prosecutor's alleged misstatement of the law of double jeopardy during closing argument resulted in a conviction on improper grounds; (4) the district court erred in failing to grant a two-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a); (5) the district court erred in giving a two-level increase for more than minimal planning, U.S.S.G. § 2B1.1(b)(5); and (6) the district court erred in giving a two-level increase for Defendant's abuse of a position of trust, U.S.S.G. § 3B1.3. This court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and finding no error we affirm.

Defendant was employed as comptroller for the Inn of the Mountain Gods (the Inn), a resort near Ruidoso, New Mexico, which is wholly owned and operated by the Mescalero Apache Tribe. Defendant's duties included receipt of vendors checks, billing and receiving payment from groups who stayed at the Inn, overseeing others employed in the accounting office, and occasionally cashing checks for Inn guests. Defendant's normal duties did not include filling out deposit slips, but she did so occasionally.

Two coworkers, who worked in the accounting department under Defendant, became aware that Defendant was altering deposit slips. Defendant would add a check to the deposit ticket and remove an equivalent amount in cash, thus keeping the total amount of the deposit the same. Most of these substitutions involved commission checks that the Inn received from vending machine contractors. Defendant never recorded the receipt of the commission checks in the daily deposit log. When the coworkers confronted Defendant about altering the deposit slips, she acknowledged she had changed the deposit slips but stated she had done so in order to cash

a check for someone because there was not enough cash in the safe. Both coworkers testified that the defendant often carried large amounts of cash at work.

During an internal investigation by the Inn, the Mescalero tribe's attorney questioned Defendant in front of a number of tribal officials, and Defendant offered no explanation for the altered deposit slips and missing cash. Later, when questioned at her home by a Federal Bureau of Investigation (FBI) agent, Defendant admitted that she had embezzled from the Inn on two specific occasions by exchanging vendors checks for cash in deposit tickets. The facts surrounding these two occasions later formed indictment Counts II and IX for which she was convicted.[1] Defendant's story at trial was different from what the FBI agent said she said. She denied stealing any money using the check for cash exchange method. Defendant claimed that she had substituted the checks for cash but had immediately put the cash in the Inn's safe.[2] However, the Inn's accountant testified that he did not find the cash in the safe or in any bank account.

## I.

■ It would appear that Defendant's conviction was based primarily on her confession to the FBI agent. Other than Defendant's confession, only circumstantial evidence pointed to her guilt. There was no direct evidence of her guilt, and no cash was found in her home or on her person. Defendant argues that the government failed to prove a corpus delicti independent of her confession.

■ Corpus delicti is a common law concept literally translated as "the body of the

crime." Black's Law Dictionary 310 (5th ed. 1979). Every crime has three component parts—(1) the occurrence of the specific kind of injury or loss (*e.g.*, homicide, a dead person; larceny, property missing), (2) criminality as the source of the loss, and (3) the accused's identity as the perpetrator. *United States v. Shunk*, 881 F.2d 917, 918 (10th Cir.1989). The first two of these elements constitute the concept of corpus delicti—*i.e.*, proof that a crime was committed and that someone, not necessarily the accused, committed it. *Id.* at 919. In Defendant's case, proof of the corpus delicti would be proof that the money was missing as the result of an employee's criminal activity. .

At one time, several courts held that evidence independent of an extrajudicial confession must establish the corpus delicti. *See, e.g., United States v. Fenwick*, 177 F.2d 488, 489–90 (7th Cir.1949); *Ercoli v. United States*, 131 F.2d 354, 357 (D.C.Cir.1942); *Pines v. United States*, 123 F.2d 825, 829–30 (8th Cir.1942). However, in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the Supreme Court rejected the requirement that the corpus delicti be established with independent proof. *Id.* at 93, 75 S.Ct. at 164. Rather, the evidence merely must tend to establish the trustworthiness of the confession. *Id.*

■ A criminal conviction cannot be sustained when the offense is proven solely by an uncorroborated extrajudicial confession. *Smith v. United States*, 348 U.S. 147, 152, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). The corroborating evidence is adequate if it "supports the essential facts

---

1. The FBI agent testified as follows regarding Defendant's confession to Counts II and IX:
   Q: What about Count 2? That relates to the deposit slip that she alone prepared with the addition of Southwest Coke check for $431.
   A: She advised on that one she had placed the Southwest Coke check in the deposit, taken out the cash and kept it for herself.
   Q: She admitted that one?
   A: Yes, she did.

   . . . . .

   Q: Count 9, which was the addition of two Bordens checks for $276 and $84 on a

changed deposit ticket from Ms. Palmer. What did Ms. Chimal say about that?
   A: It was on that count she advised me she probably did take those Bordens checks because she liked to take any checks from Borden.
   Tr. 174, 177.

2. Defendant did admit at trial that she had taken approximately $1,500 over time from the Inn's safe in small $20.00 increments; however, these thefts were not charged in the indictment.

admitted sufficiently to justify a jury inference of the truth" of the confession. *Opper*, 348 U.S. at 93, 75 S.Ct. at 164. *See also Sells v. United States*, 262 F.2d 815, 820 (10th Cir.1958), *cert. denied*, 360 U.S. 913, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959). The quantity and type of independent evidence depend upon the facts of each case. *Opper*, 348 U.S. at 93, 75 S.Ct. at 164. *See also United States v. Henderson*, 467 F.2d 904, 906 (10th Cir.1972). Circumstantial evidence can be used to corroborate a confession. *See Cordoba v. Hanrahan*, 910 F.2d 691 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990).

█ Our review of the record leads us to conclude that the evidence sufficiently corroborates Defendant's extrajudicial confession. Direct testimony from Defendant's coworkers indicated that she altered deposit slips and substituted vendor checks for cash. Testimony from the Inn's accountant indicated that Defendant had failed to record the vendor checks in the deposit log and that the cash taken from the deposits never appeared in the Inn's bank account or in the safe. Defendant was often observed by coworkers to carry large amounts of cash at work. This testimony sufficiently establishes the trustworthiness of Defendant's confession.

█ Once a court determines that evidence exists to corroborate the trustworthiness of the confession, the evidence as a whole must be sufficient to support a finding of guilt beyond a reasonable doubt. *Martinez v. United States*, 295 F.2d 426 (10th Cir.1961). In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). After reviewing the evidence in this case, which consisted of Defendant's confession and the evidence corroborating her confession, we hold that the prosecution presented ample evidence from which the jury could have found Defendant guilty of embezzlement as to Counts II and IX beyond a reasonable doubt.

## II.

█ Defendant next argues that the trial court erred in allowing the prosecutor to impeach Defendant with her silence during the Inn's internal investigation. At trial, Defendant testified that she had substituted the checks for cash but had immediately put the cash in the Inn's safe. On cross-examination, the district court permitted the prosecutor to ask Defendant why she did not offer this explanation to Tribal officials and the Tribe's attorney during the internal investigation.[3] Defendant argues that her failure to offer an explanation before the tribal leaders and the tribe's attorney was an exercise of her Fifth Amendment right to remain silent and therefore an improper basis for impeachment. *See Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) (prosecutor may not impeach defendant on his silence after defendant was in custody and had been read his *Miranda* rights); *United States v. Burson*, 952 F.2d 1196, 1201 (10th Cir.1991), *cert. denied,* — U.S. —— 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992) (prosecutor may not address in case-in-chief defendant's pre-arrest refusal to speak to government criminal investigators).

It is well-established that a prosecutor may use a defendant's pre-arrest silence to impeach the defendant's credibility. *Jenkins v. Anderson*, 447 U.S. 231, 238–40, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980). *See also Burson*, 952 F.2d at 1201 (acknowledging that although general rule of law is that once defendant invokes his right to remain silent it is impermissible for prosecution to refer to that silence, there are exceptions to this rule such as use of

---

**3.** During the government's case-in-chief, the district court did not allow the prosecutor to question the Tribe's attorney about Defendant's lack of explanation to tribal officials. The district court recognized that the tribal officials were similar to government agents, and thus the questioning might be prohibited by *United States v. Burson*, 952 F.2d 1196, 1201 (10th Cir. 1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992).

silence for impeachment in certain circumstances). In *Jenkins,* a murder defendant turned himself in to governmental authorities two weeks after the fatal stabbing. The defendant testified at trial that he acted in self-defense. On cross-examination, the prosecutor asked the defendant why he did not wait for the police to arrive after the stabbing so that he could tell them that he had acted in self-defense and why he did not report the self-defense stabbing for two weeks. The Supreme Court found no error holding that the use of pre-arrest silence to impeach a defendant's credibility did not violate the Constitution because the "impeachment follows the defendant's own decision to cast aside his cloak of silence." *Id.* 447 U.S. at 238, 100 S.Ct. at 2129.

While the Court in *Doyle* held that a prosecutor cannot impeach a defendant with his silence invoked during a custodial interrogation, 426 U.S. at 619, 96 S.Ct. at 2245, Defendant Chimal was not in custody. *Burson* is also inapposite because the prosecutor did not bring up Defendant's silence during his case-in-chief. Rather, Defendant's non-custodial pre-arrest silence was admitted solely for impeachment. Accordingly, *Jenkins* controls, and we find no error.

### III.

Defendant next argues that the prosecutor misstated the law of double jeopardy during closing argument resulting in her conviction on improper grounds. The prosecutor's statement was in response to defense counsel's statement in closing that Defendant was not charged with the embezzlement that she committed. The objectionable argument by the prosecutor was prompted by the following argument by defense counsel in closing:

> And she finally admitted after questioning, yes, she had been doing that [taking cash in small increments from the safe]. But that's not what she was indicted for. That's not what we're in this lawsuit about. That's not what this indictment—

you're going to get a copy. That's not what this is all about. They didn't charge her with that. They could and they can. But that's not what—she's admitted to that. But that's not what she's charged with.

Tr. 281. *See also supra* note 2. According to defense counsel's closing, Defendant had only embezzled small amounts of cash from the safe; whereas, the indictment charged embezzlement by exchanging checks for cash in deposit tickets.[4] Defendant contends that the prosecutor's closing implied that if the jury acquitted Defendant on the embezzlement counts charged in the indictment, Defendant could not be retried later for embezzlements she may have committed by taking money in small increments directly from the safe. Defendant discerns this meaning from the following statement by prosecutor:

> Lastly Mr. Binford [defense counsel] made the statement that she is an embezzler, but you didn't charge her, therefore acquit her of all 11 counts. And, quote, the Government can still charge her. That's an incorrect statement as well. If you believe her, acquit her. But if you don't believe her, return a verdict of guilty on the 11 counts. Because that's really what this trial is all about. And when Mr. Binford gets up and says it can be done again or redo it later on, that's not correct. The decision is binding.

Tr. 296. We do not characterize the prosecutor's statement in closing in the same light as Defendant. It seems to us that the prosecutor merely asked the jury to review the evidence presented at trial regarding the instances of embezzlement charged in the indictment. Then, the prosecutor requested that the jury return a verdict of guilty if they believed the evidence, because the government could not retry Defendant for those specific instances of embezzlement after Defendant was acquitted. Because we reject Defendant's characterization of the prosecutor's statement, we

---

**4.** The indictment, however, did not outline Defendant's specific means of embezzlement—only the evidence at trial outlined Defendant's check- for-cash-exchange means of embezzlement. *See* n. 1.

decline to address whether Defendant's characterization of the prosecutor's statement was an improper statement of the law.

## IV.

■ In regard to sentencing, Defendant contends that the trial court erred in failing to grant a two level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1(a). An acceptance of responsibility determination by a district court is a question of fact reviewable under a clearly erroneous standard. *United States v. Spedalieri*, 910 F.2d 707, 712 (10th Cir.1990). The burden of proof is on the defendant and the quantum of proof is by a preponderance of the evidence. *Id.* Whether a defendant should be granted a two level adjustment for acceptance of responsibility depends upon whether a defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E.1(a). Defendant denied any criminal wrongdoing relating to the counts charged in the indictment at trial, and she persisted in this denial following her conviction during her presentence interview. Therefore, the district court's failure to award a two level downward adjustment was not clearly erroneous.

## V.

■ Defendant next argues that the trial court erred in giving a two level increase for more than minimal planning. U.S.S.G. § 2B1.1(b)(5). We review this factual determination for clear error. *United States v. Williams*, 966 F.2d 555, 558 (10th Cir. 1992) (citations omitted). More than minimal planning is defined as "significant affirmative steps ... taken to conceal the offense.... [or] repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, comment (n.1(f)). "In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, ... several instances of taking money, each accompanied by false entries [would constitute more than minimal planning]." *Id.* *See also* *Williams*, 966 F.2d at 558.

Defendant Chimal had access to the checks and concealed them until the time was right to make the switch for cash on the deposit slips. These actions involved repeated acts and required planning over an extended period of time. *See United States v. Lee*, 973 F.2d 832, 833 (10th Cir. 1992) (sentencing level increase for more than minimal planning appropriate when defendant, who was customer service officer at bank, helped customers fill out deposit slips on six occasions and deposited funds in her own account); *Williams*, 966 F.2d at 558 (sentencing level increase for more than minimal planning was appropriate when embezzlements transpired over period of six months and involved numerous computer entries). Accordingly, the trial court's finding was not clearly erroneous.

## VI.

■ Finally, Defendant argues that the trial court erred in giving a two level increase for Defendant's abuse of a position of trust. U.S.S.G. § 3B1.3. We review for clear error. *United States v. Williams*, 966 F.2d 555, 556 (10th Cir.1992).

■ The adjustment for abuse of a position of trust may not be employed when the elements of the underlying offense include abuse of trust. U.S.S.G. § 3B1.3. Although embezzlement by definition involves an abuse of trust,[5] embezzlement by someone in a significant position of trust warrants the enhancement when the position of trust substantially facilitated the commission or concealment of the crime. *Id.; Williams*, 966 F.2d at 556. An ordinary bank teller, who steals from the till and adjusts the records, is not subject to the abuse of trust enhancement

---

5. Embezzlement involves "the fraudulent appropriation to his own use or benefit, of property or money entrusted to [an individual] by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character." *United States v. Christiansen*, 958 F.2d 285, 287 (9th Cir.1992) (citing Black's Law Dictionary 614 (rev. 4th ed. 1968)).

because the job is not considered a position of trust. U.S.S.G. § 3B1.3, comment (n.1). Unlike a bank teller, Defendant as comptroller held a position of trust. She essentially had complete control over the accounting department and rarely had to report her activities to a superior. *See United States v. Lieberman*, 971 F.2d 989, 991 (3d Cir.1992) (bank vice president with authority to balance the bank suspense account, who was not regularly supervised and who was able to conduct thirty-six transactions over four years without being caught, held a position of trust); *United States v. Milligan*, 958 F.2d 345, 347 (11th Cir.1992) (infrequent monitoring and infrequent audits placed postal window clerk in position of trust); *United States v. Ajiboye*, 961 F.2d 892, 895 (9th Cir.1992) (freedom from surveillance while delivering the mail and lack of accounting for particular pieces of mail placed postal carrier in position of trust); *United States v. Hill*, 915. F.2d 502, 505–07 (9th Cir.1990) (truck driver entrusted to carry family belongings half way across country for transport oversees and not subject to surveillance or frequent audit placed him in position of trust). *But see United States v. Helton*, 953 F.2d 867, 869 (4th Cir.1992) (defendant did not hold a position of trust because lack of supervision and delay in detection resulted from supervisors who were inept, sloppy and derelict in their duty).

Defendant's position of trust substantially facilitated her crime. *Williams*, 966 F.2d at 556. In *Williams*, we held that a military pay account technician who embezzled from an Air Force finance center held a position of trust which substantially facilitated his crime because his access to individual accounts which he personally audited enabled him to uniquely circumvent the finance center's system of checks and balances designed to guard against embezzlement. *Id.* at 558. A number of circuits have based the two level increase for abuse of trust on the ability to avoid detection. *See United States v. Ehrlich*, 902 F.2d 327 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991) (other bank employees could have executed same embezzlement scheme as defendant, but de-

fendant's position of trust which gave her authority to routinely balance her own loan transactions facilitated her embezzlements); *United States v. McMillen*, 917 F.2d 773 (3d Cir.1990) (defendant's authority to approve loan applications, issue savings certificates and sign bank documents without supervisory approval facilitated concealment of crime and constituted abuse of trust). Similarly, Defendant had complete access to the vendor checks and her position enabled her to alter deposit slips without arousing suspicion. Perhaps, other accounting department employees could have obtained the vendor checks and switched them for cash in the deposits, but only Defendant, as comptroller and supervisor of the accounting department, had the ability to avoid detection over a long period of time. Defendant's position did not merely provide an opportunity which could as easily have been afforded to other persons. *Williams*, 966 F.2d at 556. Therefore, the district court's determination that Defendant abused her position of trust was not clearly erroneous.

AFFIRMED.