UNITED STATES of America, Plaintiff–Appellee,

v.

Jeffrey Allen CLARK, Defendant–Appellant.

No. 94–8093.

United States Court of Appeals, Tenth Circuit.

June 13, 1995.

John R. Barksdale, Asst. U.S. Atty., Casper, WY, for appellee.

Corinne A. Miller, Casper, WY, for appellant.

Before SEYMOUR, Chief Judge, BARRETT, Circuit Judge, and DAUGHERTY *, District Judge.

---

* The Honorable Frederick A. Daugherty, Senior Judge, United States District Court for the North-ern, Eastern and Western Districts of Oklahoma, sitting by designation.

BARRETT, Senior Circuit Judge.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Jeffrey Allen Clark (Clark) appeals from his conviction and sentence in the district court on two counts of possession and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

### Facts

On April 2, 1994, at approximately 6:10 p.m., Clark was stopped in Casper, Wyoming, by Wyoming Highway Patrol Officer Lawrence Jordan (Officer Jordan) for improper use of a turn signal. A license check revealed that Clark had a suspended Wyoming driver's license and an outstanding bench warrant for his arrest for probation revocation in a Wyoming state district court. Officer Jordan arrested Clark on the bench warrant. Pursuant to the arrest, Officer Jordan arranged to have Clark's car towed and he transported Clark to the Natrona County Jail.

At the jail, Clark told Officer Jordan that he had five ounces of "crank" (methamphetamine) in his front coat pocket. (R., Vol. II, p. 47). Officer Jordan testified that Clark also told him that he was trying to get enough money from selling the methamphetamine to get home. *Id.* at 48. However, Clark claims that he did not make this latter statement, but told Officer Jordan that he had just got done setting up enough money to get back home. (R., Vol. III, p. 76). A search of Clark's front coat pocket revealed approximately five grams of methamphetamine in individually wrapped one-gram baggies and $0.76.

At about 8:00 p.m. that evening, Wyoming Division of Criminal Investigation (DCI) Special Agents Cameron Ritter and Christopher Walsh (the DCI Agents) interviewed Clark for approximately two hours. The interview

was neither audio taped nor video recorded. The DCI Agents testified that Clark was given a *Miranda* warning, which he waived.[1] *Id.* at 7–8. However, Clark did not sign a waiver of his *Miranda* rights nor did he sign or write a statement.[2]

The DCI Agents testified that Clark told them that: he had traveled from Albuquerque, New Mexico, with three ounces of methamphetamine which he planned to sell; he had sold two ounces at three local (Casper) bars to various persons for $150 per gram; and he had a one ounce stash of methamphetamine in a hole in the wall of the community bathroom at the Aristo Apartments. (R., Vol. II, p. 70–78; Vol. III, p. 9–11). Based upon Clark's detailed description, the DCI Agents searched the Aristo Apartments where Clark told them the methamphetamine was stashed and found a brown paper bag with 15 individually wrapped one-gram baggies of methamphetamine in the exact location specified by Clark. The total weight of methamphetamine, including the stash and what was found in Clark's pocket, was 23.4 grams, about 1 ounce. No drugs, drug paraphernalia, drug ledgers, or money were found in Clark's car.

Clark denied that he had sold or intended to sell any methamphetamine. (R., Vol. III, p. 64). Clark testified that: he had traveled from Albuquerque, New Mexico, with a girlfriend, Joyce, for the purpose of visiting her son; they had stayed at a motel on Wyoming Boulevard across from the Flying "J"; Joyce had returned from her visit with a brown paper bag containing several individual baggies of methamphetamine; he did not know where she had obtained the drugs; and they got high and partied throughout the night. *Id.* at 61–63, 75. Clark further testified that the next day after Joyce left to visit her son, he got high, stashed the brown paper bag in the hole in the wall at the Aristo Apartments, and drove around Casper until he was arrested. *Id.* at 64–65.

1. Under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before any custodial interrogation, a defendant must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, that he has the right to the

Clark asserts that he willingly spoke with the DCI Agents because he could smoke cigarettes and believed he would receive lenient treatment. Clark denied that he intended to sell the methamphetamine and claimed it was for his own personal use. *Id.* at 64.

On May 17, 1994, Clark was indicted for possession with intent to distribute methamphetamine and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

On July 27, 1994, Clark was convicted of both counts after a two-day jury trial. On September 22, 1994, Clark was sentenced to 74 months imprisonment followed by four years supervised release.

*Issues*

On appeal, Clark contends that: (1) there was insufficient evidence to support his conviction for possession with intent to distribute methamphetamine and distribution of methamphetamine, and (2) the district court's calculation of the quantity of drugs at three ounces for the base offense level and sentence was clearly erroneous.

*Discussion*

I.

Clark contends that there was insufficient evidence presented at trial to support his conviction for possession with intent to distribute methamphetamine and distribution of methamphetamine.

Clark argues that his confession cannot serve as the basis for a conviction absent some independent corroborating evidence establishing either the trustworthiness of the statement or the actual occurrence of the offense; that the government must prove that the 20 packets of methamphetamine were more than that which Clark would possess for his own personal use; that this court must reverse the conviction, where the evi-

presence of an attorney, and that if he cannot afford an attorney, one will be provided for him.

2. On appeal, Clark does not challenge the admissibility of his confession testified to by the DCI Agents.

dence, as here, gives "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged;" and that the DCI Agents created a confession out of his answers to hypothetical questions.

■ Although "a criminal conviction cannot be sustained when the offense is proven solely by an uncorroborated extrajudicial confession," *United States v. Chimal,* 976 F.2d 608, 610 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 715 (1993); *Smith v. United States,* 348 U.S. 147, 152, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954), corroborating evidence is adequate if it "supports the essential facts admitted sufficiently to justify a jury inference of the truth" of the confession. *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954). The quantity and type of independent corroborating evidence depends upon the facts of each case. *Id.* However, circumstantial evidence can be used to corroborate a confession. *Chimal,* 976 F.2d at 611.

In *Chimal,* this court affirmed the defendant's conviction for embezzlement that was primarily based upon her confession to FBI agents. 976 F.2d at 610. When questioned at her home before trial, the defendant admitted to the FBI agents that she had embezzled funds on two separate occasions; at trial, the defendant denied stealing and testified she had put the money in the safe. *Id.* On appeal, the defendant argued that there was no direct evidence of her guilt and that the government failed to prove a corpus delicti independent of her confession. *Id.* In holding that her confession was sufficiently corroborated to establish its trustworthiness, we relied on the testimony of the defendant's coworkers that: she altered deposit slips, she substituted vendor checks for cash, she failed to record the vendor checks in the deposit log, cash taken from the deposits never appeared in the bank account or the safe, and she was often seen carrying large amounts of cash at work. *Id.* at 611.

■ Our review of the record leads us to conclude that the evidence sufficiently corroborates Clark's extrajudicial confession. The evidence shows that the DCI Agents recovered 15 individually wrapped one-gram baggies of methamphetamine in the exact location described in detail by Clark in his confession. This evidence sufficiently establishes the trustworthiness of Clark's confession.

■ Once it has been determined that evidence exists to corroborate the trustworthiness of the confession, the evidence as a whole must be sufficient to support a finding of guilt beyond a reasonable doubt. *Chimal,* 976 F.2d at 611. "Evidence is sufficient to support a criminal conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. Mains,* 33 F.3d 1222, 1227 (10th Cir.1994); *United States v. Ray,* 973 F.2d 840, 841–42 (10th Cir.1992).

■ We hold that the government presented sufficient evidence from which a reasonable jury could have found Clark guilty of possession with intent to distribute methamphetamine and distribution of methamphetamine beyond a reasonable doubt, and we reject Clark's argument that there was insufficient evidence to convict him because the evidence could support a finding that the methamphetamine was for personal use and not for distribution. Although it is possible to hypothesize from circumstantial evidence that the 20 individually wrapped one-gram baggies of methamphetamine were for Clark's own personal use, "the evidence required to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991). *See United States v. Alonso,* 790 F.2d 1489, 1493 (10th Cir.1986) (quoting *United States v. Henry,* 468 F.2d 892, 894 (10th Cir.1972)).

## II.

Clark contends that the district court erroneously calculated the quantity of methamphetamine used for his base level offense and sentence. Clark does not challenge the ap-

plication of the sentencing guidelines; rather, he simply challenges the quantity of methamphetamine attributable to him.

Clark asserts that the accurate quantity of methamphetamine that should have been used to determine his base offense level was the 23.4 grams actually introduced at trial and that the sole basis for using three ounces was his alleged statements to the DCI Agents, i.e., that he had traveled from Albuquerque to Casper with three ounces of methamphetamine which he planned to sell, that he sold two ounces and stashed one ounce in a hole in the wall at the Aristo Apartments. Clark argues that, in any event, without any independent corroboration, his hearsay statements [3] are insufficient grounds on which to calculate the relevant conduct.

■ The government has the burden of proving the quantity of drugs for sentencing purposes by a preponderance of the evidence. *United States v. Garcia,* 994 F.2d 1499, 1508 (10th Cir.1993); *United States v. Ortiz,* 993 F.2d 204, 207 (10th Cir.1993). "We review this determination under a clearly erroneous standard, and we will not disturb it unless it has no support in the record, or unless after reviewing all the evidence we are firmly convinced that an error has been made." *United States v. Cook,* 949 F.2d 289, 296 (10th Cir.1991). *See United States v. Roederer,* 11 F.3d 973, 981 (10th Cir.1993); *United States v. Earls,* 42 F.3d 1321, 1325 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1800, 131 L.Ed.2d 727 (1995). We defer to the district court when reviewing the credibility of witnesses on whose testimony it relies in making its factual findings. *Cook,* 949 F.2d at 296.

In *Earls,* the defendants challenged the district court's reliance on testimony at sentencing for the determination of the quantity of drugs involved in the conspiracy. 42 F.3d at 1325. The declarant testified that he went to California every five to six weeks and picked up five to six pounds of drugs. *Id.* at 1326. The defendants attacked the credibility of the declarant and argued that his testi-

mony was wholly uncorroborated. *Id.* We pointed out that the district court found the testimony to be a "truthful account," which was corroborated by telephone toll records, body mike conversations, and tape-recorded phone calls collected by the government. *Id.* Based on this evidence, we could not find that the declarant's "testimony was too unreliable to support the trial judge's conclusions." *Id.* Therefore, we held that the district court's determination of the quantity of drugs based on this testimony was not clearly erroneous. *Id.*

■ Here, the district court relied upon the testimony of the DCI Agents relating Clark's confession for the drug quantity of three ounces of methamphetamine. The district court found that the testimony of the DCI Agents was "reliable" and had "the minimum indicia of reliability" which was more than a preponderance of the evidence. (R., Vol. V, p. 22–23). In addition, the out-of-court statements made by Clark during his questioning by the DCI Agents concerning his transportation of three ounces of methamphetamine from Albuquerque to Casper, sale of two ounces, and stash of one ounce were sufficiently corroborated when the DCI Agents searched the Aristo Apartments and found the 15 one-gram baggies in the exact location related to them by Clark.

Information relied on by the district court at sentencing must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *Ortiz,* 993 F.2d at 207. We find nothing in the record to undermine the district court finding. With all due regard given to the district court's credibility determinations, we hold that the district court's calculation was not clearly erroneous.

**AFFIRMED.**

■

---

**3.** Contrary to Clark's characterization, his statements to the DCI Agents were not hearsay. *See*

Fed.R.Evid. 801(d)(2).