**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

WILLIAM ARTHUR EVANS and
MAGDA GUZMAN EVANS,

        Defendants - Appellants.

Nos. 01-4048, 01-4052
(D.C. Nos. 2:98-CR-575-01-C,
2:98-CR-575-02-C)
(D. Utah)

---

**ORDER AND JUDGMENT**   *

---

Before **KELLY** , **BRISCOE** , and **LUCERO** , Circuit Judges.

---

Defendants William Arthur Evans and his wife Magda Guzman Evans were

charged by a superceding indictment with 130 counts of false statements to a

government agency, in violation of 18 U.S.C. § 1001, and embezzlement or

misapplication from a government child nutrition program, in violation of

---

*     The case is unanimously ordered submitted without oral argument
according to the parties' request for a decision on the briefs and pursuant to
Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  The Court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

42 U.S.C. § 1760(g). Each defendant pled guilty to four of these counts, and the balance were dismissed. After conducting two evidentiary hearings and a comprehensive sentencing hearing, the district court enhanced each defendant's sentence for knowledge of a vulnerable victim and for abuse of a position of trust. U.S.S.G. §§ 3A1.1(b)(1), 3B1.3. On appeal defendants challenge these enhancements. We have jurisdiction under 12 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), and we affirm.

## I

The parties are familiar with the underlying facts, and we repeat them only to the extent necessary. Defendants ran a sponsoring organization, Children of the Future, Inc. ("COTFI"), which contracted with the Utah State Office of Education ("USOE") to carry out the Child and Adult Care Food Program under the National School Lunch Act. As a sponsoring organization, COTFI recruited day care providers, who in turn provided meals to underprivileged children. USOE received funds from the federal government and dispensed them to the sponsors based on the number of children being fed. In addition to receiving money to reimburse the providers, sponsors received funds to cover overhead and other administrative costs. Sponsors were generally responsible for recruiting and training providers, securing health and fire inspections of provider homes, collecting monthly meal claim forms for submission to USOE, and disbursing

payment to the providers. Sponsors received training in the administrative and record keeping functions, but, in general, they were subjected to little direct oversight by the state because of insufficient staff. The defendants in this case were also relatively free from supervision because their records appeared to be in order.

Taking advantage of this lack of oversight, defendants submitted fraudulent paperwork to USOE; claimed reimbursement for meals not served or for providers no longer with the program; and listed incorrect addresses for providers, which secured government inspections of homes that were not provider homes. In addition, defendants demanded that some providers give them kickbacks from provider-reimbursement checks, allegedly to assist in obtaining a new office for COTFI.

## II

As a result of these activities, and after hearing considerable evidence, the district court enhanced defendants' sentences for two reasons: because they knew or should have known that the victims of their crimes were vulnerable victims, and because they abused a position of trust. Defendants challenge the district court's application of the sentencing guidelines in enhancing their sentences. We review the district court's interpretation and application of the sentencing

guidelines de novo and review the underlying factual determinations for clear error. United States v. Pappert, 112 F.3d 1073, 1078 (10th Cir. 1997).

**III**

Under U.S.S.G. § 3A1.1(b)(1), a two-level enhancement is allowed "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." A vulnerable victim is a person "who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)" and one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Id. at comment n.2. A district court's identification of unusually vulnerable victims is a factual determination that we review for clear error. United States v. Caballero, 277 F.3d 1235, 1250 (10th Cir. 2002). The court's findings are clearly erroneous only if there is no "factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." United States v. Beaulieu, 893 F.2d 1177, 1182 (10th Cir. 1990).

After hearing extensive testimony, the district court found that a group of providers in the Wendover, Utah area were vulnerable victims. The court concluded they were victims because defendants demanded kickbacks from their provider reimbursement checks, and several providers testified that they complied

with defendants' demands. The district court found that the providers were vulnerable based on a combination of facts: they faced severe financial conditions, including challenges because of the need to feed their own children; they lacked legal immigration status, which resulted in apprehension regarding reporting defendants' actions to authorities and fear of being deported or summarily terminated from the provider program; they had language difficulties because most spoke little or no English; and they were lacking in education. Our review of the record reflects ample support for the district court's findings and the conclusion that these providers were vulnerable victims. [1]

Moreover, relevant conduct includes "all acts . . . that occurred during the commission of the offense of conviction. . . ." U.S.S.G. § 1B1.3(a). Based on the district court's specific findings regarding the characteristics of the Wendover providers, it is clear that these victims are victims of the relevant conduct for which defendants are accountable. See United States v. Holbert, 285 F.3d 1257, 1262 (10th Cir. 2002) (court has long held that "victim of the offense" includes either victim of offense of conviction or of any relevant conduct). The court may properly consider all harm caused by the relevant conduct. See United States v.

---

[1] Because only one vulnerable victim is necessary to support this enhancement, United States v. Smith, 133 F.3d 737, 749 (10th Cir. 1997), we need not address defendants' argument that the government cannot be a vulnerable victim.

Calozza , 125 F.3d 687, 690 (9th Cir. 1997).  That the government may have been the entity directly targeted by the offense of conviction does not change the applicability of the vulnerable victim enhancement in this case.      See United States v. Firment , 296 F.3d 118, 121 (2d Cir. 2002) (vulnerable victim adjustment authorized where offense conduct victimized vulnerable person, even though entity directly targeted by offense of conviction was different);      United States v. Johnson , 297 F.3d 845, 873 (9th Cir. 2002) (vulnerable victim enhancement proper where conduct relevant to defendant's crime of conspiracy to commit promotional money laundering victimized vulnerable persons).

Defendants' sentences were also enhanced under U.S.S.G. § 3B1.3 for abusing a position of trust. [2]  A  position of trust is characterized by "professional or managerial discretion (   i.e. , substantial discretionary judgment ordinarily given considerable deference)."    U.S.S.G. § 3B1.3 cmt. n.1.  "For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (        e.g. , by making the detection of the offense or the defendant's responsibility for the offense more difficult)."    Id.  The primary concern of this enhancement "is to

---

[2]      Defendants' argument that the enhancement was improper because it is included in their base offense level is foreclosed by this court's decision in United States v. Queen   , 4 F.3d 925, 928 (10th Cir. 1993) (holding that "[t]he guideline for fraud is § 2F1.1, and it does not include any factoring for abuse of a position of trust").

penalize defendants who take advantage of a position that provides them freedom to commit or conceal a difficult-to-detect wrong." United States v. Trammell, 133 F.3d 1343, 1355 (10th Cir. 1998) (further quotation omitted). The factors used in determining whether a defendant occupied a position of trust include (1) the extent to which the position provides freedom to commit a difficult-to-detect wrong and whether an abuse could be readily or easily noticed; (2) the defendant's duties as compared to those of other employees; (3) the defendant's level of specialized knowledge; (4) the defendant's level of authority in the position; and (5) the level of public trust. United States v. Williams, 966 F.2d 555, 557 (10th Cir. 1992).

As with the vulnerable victim finding, whether a defendant occupies a position of trust is generally a factual matter that we review for clear error. United States v. Haber, 251 F.3d 881, 890-91 (10th Cir.), cert. denied, 122 S. Ct. 259 (2001). We have generally applied this enhancement in two categories of cases: "(1) where employees abuse their position within their own organization to take advantage of the employer, and (2) where someone uses a fiduciary or personal trust relationship to perpetrate the charged offense against the beneficiary of the trust." Pappert, 112 F.3d at 1080 (further quotations omitted).

Extensive testimony regarding the trust reposed in defendants by the governmental agencies and defendants' abuse of that trust was heard by the

district court.  The record shows that defendants exercised considerable control and maintained considerable independence, despite some regulatory oversight.  In addition to taking advantage of the funding agencies, the record also supports the finding that defendants occupied a position of trust with respect to the providers and that they used that relationship to perpetuate the offense.  Providers were not given funds in advance to provide meals for children, but rather were reimbursed for meals provided during the previous month.  Defendants received the funds that they were to use to reimburse providers.  This placed defendants in a personal trust relationship with the providers, and the defendants' demands for kickbacks abused that trust and deprived the providers of reimbursement funds.

On appeal, defendants also argue that the abuse of a position of trust enhancement was improper because abuse of trust was included in their base offense level.  In <u>United States v. Levy</u>, 992 F.2d 1081, 1084 (10th Cir. 1993), we held that the abuse of a position of trust guideline "directs that we look to the base offense level and the specific offense characteristics assigned by the guidelines to the crime of conviction."  In this case, it is not disputed that the appropriate guideline is  U.S.S.G. § 2F1.1.  Neither the base level, which covers many forms of fraud, nor the special offense characteristics, account for an abuse of trust.  <u>See</u> <u>id.</u>

We have also held that this enhancement may not be applied when the elements of the underlying offense include abuse of a position of trust. United States v. Chimal, 976 F.2d 608, 613 (10th Cir. 1992). The essential elements supporting a conviction under 18 U.S.C. § 1001 (making false statements to government agency) are that the defendant (1) made a statement, (2) which was false, fictitious or fraudulent and defendant knew it was, (3) the statement was made knowingly and willfully, (4) was within the jurisdiction of the federal agency and (5) was material. United States v. Harrod, 981 F.2d 1171, 1175 (10th Cir. 1992). Thus, § 1001 can be violated by a defendant making a false statement "in any manner within the jurisdiction or any department or agency of the United States," not just by one in a position of trust. None of the elements of this offense involve the abuse of a position of trust.

As to the embezzlement count, these elements involve a fraudulent appropriation of property or money entrusted to the defendant by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character. See Chimal, 976 F.2d at 613 n.5 (quotation omitted). Moreover, "[a]lthough embezzlement by definition involves an abuse of trust, embezzlement by someone in a significant position of trust warrants the enhancement when the position of trust substantially facilitated the commission of concealment of the crime." Id. at

613 (footnote omitted). In this case, defendants' positions substantially facilitated both the commission and concealment of the crimes.

Finally, in United States v. Queen, 4 F.3d 925, 928 (10th Cir. 1993), we recognized the divergence between Levy and Chimal, as "indicative of the general division characterizing the federal courts with respect to the meaning of the term 'base offense level' in the context of § 3B1.3." Thus, we concluded that under either Chimal or Levy, the defendant's base offense did not implicate an abuse of trust. Id. Specifically, we held that the fraud guideline is U.S.S.G. § 2F1.1, "and it does not include any factoring for abuse of a position of trust." We also considered the elements underlying the specific offense. Id. As with the defendant in Queen, in this case the government did not need to prove that defendants' false statements or embezzlement constituted an abuse of a position of trust as an element of the offense. Accordingly, this enhancement was proper.

## IV

The record amply supports the district court's findings that defendants knew or should have known that their victims were vulnerable and that defendants

abused a position of trust.  As a result, we conclude that the district court correctly applied the sentencing guidelines to enhance defendants' sentences.

AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge