**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Henry WILLIAMS, Jr., Defendant– Appellant.**

**No. 91–1371.**

United States Court of Appeals, Tenth Circuit.

June 1, 1992.

---

Michael J. Norton, U.S. Atty., and Gregory C. Graf, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Michael G. Katz, Federal Public Defender, and Mark J. Rosenblum, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

Before MOORE, TACHA, and BRORBY, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Defendant Henry Williams, Jr., was a military pay account technician in the Defense Finance Accounting Service–Denver Center, Lowry AFB, Colorado. On August 22, 1990, Mr. Williams fraudulently manipulated the automated pay system at Lowry AFB, causing a check to be issued in the amount of $1,704.12 to his friend, Jimmy Mahomes. Defendant entered a leave cancellation into Mr. Mahomes' master military pay account to give the appearance

that Mr. Mahomes was entitled to the payment.

On November 23, 1990, and February 15, 1991, the defendant again manipulated the automated pay system and issued checks to Mr. Mahomes in the amount of $4,627.94. While using the computer to issue the November 23rd check, Mr. Williams used the initials "M.L." next to the transaction in Mr. Mahomes' master military pay account. The initials "M.L." belong to Mitch Logan, a separations pay clerk at Lowry AFB.

Because the November 23, 1990, and February 15, 1991, checks were issued without any justifying paperwork, a negative balance was showing in Mr. Mahomes' master military pay account. Therefore, on March 1, 1991, Mr. Williams entered a debt cancelation on this account.

An audit conducted on Mr. Mahomes' account resulted in an Air Force OSI investigation of the defendant. Mr. Williams subsequently pled guilty to embezzlement of public money and was sentenced to four months' imprisonment, followed by eight months' supervised release. He contends the district court erred by increasing his offense level based on abuse of trust and on more than minimal planning, as defined in the United States Sentencing Guidelines. We affirm.

## I.

Section 3B1.3 of the Guidelines mandates a two-level upward adjustment of a defendant's base level "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." The Guidelines do not define "position of trust," but the commentary to § 3B1.3 provides some guidance on applying the enhancement:

> The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity which could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

U.S.S.G. § 3B1.3, comment. (n. 1). Abuse of a position of trust is "a sophisticated factual determination that will be affirmed unless clearly erroneous." *United States v. Ehrlich,* 902 F.2d 327, 330 (5th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991). *Accord United States v. Helton,* 953 F.2d 867, 869 (4th Cir.1992).

In determining whether a defendant was in a "position of trust" courts have considered a number of factors. These include: the extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed;[1] defendant's duties as compared to those of other employees;[2] defendant's level of specialized knowledge;[3] defendant's level of authority in the position;[4] and the level of public trust.[5]

Mr. Williams contends that his embezzlement as a military pay account technician is

**1.** See, e.g., *United States v. Hill,* 915 F.2d 502, 506–07 (9th Cir.1990); *United States v. Helton,* 953 F.2d 867, 869–70 (4th Cir.1992), *United States v. Castagnet,* 936 F.2d 57, 62 (2d Cir. 1991); *United States v. Drabeck,* 905 F.2d 1304, 1305 (9th Cir.1990), *aff'd,* 946 F.2d 629 (9th Cir.1991).

**2.** See, e.g., *United States v. Lange,* 918 F.2d 707, 709–10 (8th Cir.1990); *United States v. Parker,* 903 F.2d 91, 104 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990).

**3.** See, e.g., *United States v. Milligan,* 958 F.2d 345, 346 (11th Cir.1992); *United States v. Ehrlich,* 902 F.2d 327, 331 (5th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991).

**4.** See, e.g., *United States v. Georgiadis,* 933 F.2d 1219, 1227 (3d Cir.1991); *United States v. McMillen,* 917 F.2d 773, 774–75 (3d Cir.1990); *United States v. McElroy,* 910 F.2d 1016, 1027–28 (2d Cir.1990); *United States v. Ehrlich,* 902 F.2d at 331; *United States v. Zamarripa,* 905 F.2d 337, 340 (10th Cir.1990).

**5.** See, e.g., *United States v. Rehal,* 940 F.2d 1, 5 (1st Cir.1991); *United States v. Brown,* 941 F.2d 1300, 1304 (5th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991); *United States v. Pascucci,* 943 F.2d 1032, 1037 (9th Cir.1991); *United States v. Foreman,* 926 F.2d 792, 795 (9th Cir.1990).

no different from embezzlement by an ordinary bank teller and that the opportunity his position provided him to commit the crime could as easily have been taken advantage of by other employees. We believe, however, there are significant differences between Mr. Williams' situation and that of an ordinary bank teller.

■ The Finance Center is a restricted access area which requires employees to possess a "line badge" and pass through a secured entryway. The Center is broken up into many different limited access function areas to prevent fraud and embezzlement. In Mr. Williams' section, the functions were divided into two groups. The line technicians can access individual accounts and make inputs to those accounts. Before any payment is issued, the changes must be approved by an auditor and then sent to the payment section. The payment section then issues the check.

As an auditor, Mr. Williams had greater authority and greater access to the master military pay accounts than line technicians. Because of his expertise, special training, and the trust placed in him by his supervisors, defendant was given access to both the line and payment sections so that he could act as a liaison and troubleshooter between the two. Defendant's unique position allowed him to circumvent the Center's checks and balances. It is clear that defendant occupied a position of trust within the Center and that he used this position both to facilitate commission of the crime and to conceal it. Therefore, the trial court has not clearly erred.

## II.

■ Section 2B1.1(5) of the Guidelines mandates a two-level upward adjustment of a defendant's base level when the offense involved more than minimal planning. "More than minimal planning" is defined in the Guidelines as

more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, ...

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.

. . . .

In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.

U.S.S.G. § 1B1.1, comment. (n. 1(f)). The trial court's finding of the amount of planning involved in an offense is essentially a factual determination which will not be disturbed on appeal absent a showing that it is clearly erroneous. *United States v. Sanchez*, 914 F.2d 206, 207 (10th Cir.1990); *United States v. Strickland*, 941 F.2d 1047, 1050 (10th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 614, 116 L.Ed.2d 636 (1991).

Mr. Williams contends that because his embezzlements were accomplished in an extremely simple manner, the trial court erred in applying the enhancement. He claims each embezzlement only took seconds to complete, and there was no need to engage in elaborate planning prior to commission of the offense. Further, he argues that use of the initials "M.L." on one occasion does not constitute the taking of significant steps to conceal the offense. Finally, he asserts each instance of the crime was purely opportune.

■ We reject Mr. Williams' contentions. To complete these embezzlements, Mr. Williams was required to access and make computer entries on Mr. Mahomes' master military pay account in the separation sections of the Finance Center. Next, using a second access code, he had to access a second computer in the payroll area to cause the checks to be issued. Last, he needed to complete several items of paperwork for each transaction.

■ Additionally, more than minimal planning is deemed present in any case

involving repeated acts over a period of time. The embezzlements at issue transpired over a period of six months and involved numerous computer entries. Finally, Mr. Williams' use of Mitch Logan's initials and use of his various positions within the center to conceal his activities were significant steps taken to conceal the embezzlements. Under these facts, the trial court's finding of more than minimal planning is not clearly erroneous.

AFFIRMED.