974 F.2d 1346
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Edith Evelyn YOUNG, a/k/a Sister, Defendant-Appellant.
 No. 90-6231.
 United States Court of Appeals, Tenth Circuit.
 Aug. 18, 1992.
 
 Before JOHN P. MOORE, McWILLIAMS and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Edith Evelyn Young appeals convictions on four counts of converting property of the United States and one count of possession with intent to distribute cocaine. She raises five points of error. We affirm.
 
 
 2
 Susan Barbara Werner, an employee of the Department of Human Services of the State of Oklahoma, was discovered by the FBI to be involved in a food stamp fraud. Confronted with the evidence, Ms. Werner agreed to cooperate with the continuing investigation. For her part, Ms. Werner agreed to continue her scheme of diverting from legitimate purposes Authorizations to Participate (ATP), documents used by legitimate welfare recipients to receive their allocation of food stamps.
 
 
 3
 Dessie Hudson had been working at the home of defendant Young since 1988. On three occasions between October 4 and October 12, 1989, Ms. Werner diverted ATPs to Ms. Hudson which she converted into food stamps. Ms. Hudson then sold the stamps for cash and small amounts of cocaine at a duplex in Oklahoma City occupied by Ms. Young.
 
 
 4
 On October 17, a search warrant was executed at Ms. Young's home. Defendant and Ms. Hudson were arrested at the time of the search. Located in defendant's bedroom were marked and unmarked food stamp coupons, three pistols, triple beam scales, electronic scales, a plastic bag containing a white powdery residue, four different Food Stamp Program ID cards, a bag containing twenty-five small glassine baggies, and a DHS envelope. As defendant was being booked in the marshal's office, 15.61 grams of 92% pure cocaine were found on her person.
 
 I.
 
 5
 Defendant contends the search warrant was invalid because the affiant failed to disclose material facts to the magistrate. She argues the affiant "intentionally and recklessly" did not inform the magistrate that: 1) Ms. Werner had told FBI agents she refused cocaine from defendant, but they later discovered she had accepted and used it; 2) Ms. Werner had "a criminal record"; 3) Ms. Werner was subject to a suspended sentence in state court; 4) Ms. Werner had a "drug history"; 5) "a syringe containing cocaine was found in a trash can next to the desk where Werner worked" approximately one month before obtaining the warrant; and 6) Ms. Werner had lied on her employment application. Defendant also claims acts referred to in the affidavit did not occur. Defendant baldly states that the affiant knew all this information before making the affidavit, but "intentionally hid these facts from the magistrate."
 
 
 6
 Defendant argues because the affiant relied on information from Ms. Werner, these omissions make the affidavit unreliable and negate the good faith of the affiant. She contends, therefore, the results of the search should have been suppressed.
 
 
 7
 The necessary predicate to a valid affidavit is the credibility of the affiant, not the informant. Indeed, a warrant must be voided if the magistrate or judge issuing the warrant "was misled by the information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." United States v. Leon, 468 U.S. 897, 923; 104 S.Ct. 3405, 3421 (1984). If, however, the affidavit contains sufficient accurate or untainted evidence, the warrant is valid despite inclusion of unreliable facts. United States v. Snow, 919 F.2d 1458, 1460 (10th Cir.1990).
 
 
 8
 Defendant does not seriously contend the representations made by the affiant were false, but rather that they were recklessly made in disregard of the truth. The burden, therefore, falls upon her to establish "the affiant 'in fact entertained serious doubts as to the truth of his' allegations." Bruning v. Pixler, 949 F.2d 352, 357 (10th Cir.1991), cert. denied, 112 S.Ct. 1943 (1992) (quoting United States v. Williams, 737 F.2d 594, 602 (7th Cir.1984), cert. denied, 470 U.S. 1003 (1985)). With this principle in mind, we turn to the record.
 
 
 9
 After reviewing the affidavit and the testimony of the affiant, Agent Raftery, we can find no evidence that suggests the affiant was in the least concerned or doubtful about the truthfulness of the statements he made. For that reason alone, we could not conclude the affiant's statements were recklessly made, and the defendant's argument must fail.
 
 
 10
 We have also discovered the so-called omitted facts defendant claims would have affected the magistrate's evaluation of the evidence are more argumentative than probative.[1] Even had all those facts been included in the affidavit, we do not believe the magistrate would have been persuaded to deny the warrant. There are substantial additional facts, including personal observations of FBI agents, set forth in the affidavit which demonstrate probable cause. We conclude, therefore, the omissions provide no reason to invalidate the warrant.
 
 II.
 
 11
 On three occasions during the examination of Ms. Werner, she volunteered testimony defendant contends was improper and the basis for a new trial. On one occasion, she euphemistically suggested Ms. Young was a drug dealer. An objection to the statement was sustained and the jury instructed to disregard it.
 
 
 12
 The circumstances of the second instance are not nearly as clear, however. The record indicates the following transpired:
 
 
 13
 Q. [By the prosecutor] Again, Ms. Werner, that was a conversation between you and who?
 
 
 14
 A. Dessie.
 
 
 15
 Q. Is that Dessie Hudson?
 
 
 16
 A. Yes.
 
 
 17
 Q. When you asked if Sister will take them all--
 
 
 18
 MR. LEE: Object to that.
 
 
 19
 THE COURT: Restate your question, I'm sorry, I didn't hear it.
 
 
 20
 MS. KAESTNER: Your Honor, I just said, when you said, "Will Sister take them all"--
 
 
 21
 MR. LEE: I object, Your Honor. That was unintelligible on that. [referring to the contents of a tape recorded conversation] I'll object to her--
 
 
 22
 THE COURT: Sustained. You can ask her what she heard.
 
 
 23
 When the prosecutor attempted to ask Ms. Werner whether she heard Ms. Hudson use the word "Sister," defense counsel again objected arguing "that was not 'Sister' [on the tape recording] to me." Counsel did not object on hearsay grounds. Although the court apparently disagreed with defendant's counsel about the nature of the impropriety of Ms. Werner's testimony, the court nonetheless admonished the prosecutor that the statement was inadmissible hearsay. The court reasoned that the government had not yet established defendant was a part of a conspiracy; therefore, her hearsay statements were inadmissible. After some further discussion of that issue with the prosecutor, the examination of Ms. Werner was resumed without further objection.
 
 
 24
 The third occasion to which counsel points is one on which Ms. Werner volunteered testimony about acts of the defendant which she did not observe. Again, an objection was sustained and the jury instructed to disregard the testimony. The witness was also admonished.
 
 
 25
 On none of these occasions did defendant request a mistrial or otherwise contend the trial court did not properly deal with the testimony. On appeal, however, counsel argues the statements so infected the fairness of the trial, we should reverse as a matter of plain error. We disagree.[2]
 
 
 26
 In our view, the trial court correctly dealt with each situation as it arose. The jury was instructed to disregard the improper testimony, and in the absence of any indication to the contrary, we must presume it followed the instruction. United States v. Morris, 623 F.2d 145, 148 (10th Cir.), cert. denied, 449 U.S. 1065 (1980). Moreover, in light of the evidence produced at trial, we do not see how the verdict could have been influenced by the objectionable responses.
 
 III.
 
 27
 Defendant contends the trial court's denial of a mistrial when a government witness allegedly stated a conclusion of law which defendant asserts was beyond his capacity was error. We believe the district court properly ruled upon the objection.
 
 
 28
 Josh Bohannon, the program supervisor of the food stamp program at the Oklahoma Department of Human Services, testified that only an authorized person should have possession of food stamp coupons. Following an objection that the witness was testifying about a legal conclusion, the answer was stricken and the jury admonished. Citing Specht v. Jensen, 853 F.2d 805 (10th Cir.), cert. denied, 488 U.S. 1008 (1989), defendant contends, nonetheless, she was prejudiced by the testimony. Defendant misreads the import of Specht.
 
 
 29
 The testimony to which defendant objects was introduced while the witness was examining a blowup of a food stamp coupon which stated on its face it was "nontransferable." When asked by the prosecutor to define "nontransferable," Mr. Bohannon stated, "it is to be used for its designated purpose; that is, to purchase edible items for nutrition. Only the bearer, or the person that is authorized to use them, should have possession or use of the coupons, unless they have been authorized by the client to do their shopping for them...." Following this answer, defense counsel asked for a bench conference at which he raised the Specht issue, claiming the witness was "giving a legal opinion." At defendant's request, the court admonished the jury to disregard any witness statement "with regard to what the law is," and advised the jury the court would instruct on the law.
 
 
 30
 The situation is quite distinct from Specht in which an expert, in response to hypothetical questions "tailored to reflect plaintiffs' view of the evidence," testified at length on issues of substantive law that would govern the jury's deliberation without intervention of the trial judge. Specht, 853 F.2d at 807. In this instance, the prompt action of the trial judge averted that infraction, and a mistrial was unwarranted.
 
 IV.
 
 31
 Defendant maintains the evidence of her unauthorized use of the ATPs in Counts 1 and 7, and of the conversion of coupons in Count 9 was insufficient. We review claims of insufficiency of the evidence in a light most favorable to the government and only to determine whether a reasonable jury could have found defendant guilty beyond a reasonable doubt on the facts presented. United States v. Johnson, --- F.2d ----, 1992 WL 177174, * 2 (10th Cir. Jul. 28, 1992).
 
 
 32
 Defendant contends there was no evidence linking her to the transactions because: no ATPs were found on her premises; nothing occurred on October 4, 1989 [the date in Count 1] that involved her; and the ATPs are not money or property of the United States so she could not have been guilty of conversion. Finally, she advances Count 9 charges her with a conversion that occurred on October 9, but no one testified "they saw or heard her until the search of her apartment on October 17." We find these arguments unpersuasive.
 
 
 33
 That no APTs were found in defendant's home on the date of the search does not preclude her conviction. Ms. Werner testified about the scheme and how the ATP of Travis Mason (Count 1) was cashed for food stamps. In addition, the jury heard the tapes of the conversations between Ms. Werner and Ms. Hudson. The same is true for the transaction involved with the Susan Casey ATP charged in Count 7. Additionally Agent Raftery testified about his surveillance of the transaction and his monitoring of the participants. The transaction charged in Count 9 is similarly supported by the testimony of Ms. Werner, the taped conversations, and the FBI surveillance.
 
 
 34
 Nearly $700 worth of marked and unmarked food stamps were found in defendant's purse or by her bed. The evidence disclosed that: defendant admitted after arrest Ms. Hudson told her she could get stamps from a girl at the capitol; defendant did not pay Ms. Hudson for the stamps; defendant had asked Ms. Hudson no questions about the stamps; and defendant was not eligible to receive them. The evidence found during the search, including the ID cards of other people, is corroborative. We believe there is an ample factual basis for the convictions.
 
 
 35
 Finally, defendant contends the convictions cannot stand because, although she was charged with conversion of the property of the United States, food stamps are issued by the State of Oklahoma; hence they are not federal property. That argument is specious.
 
 
 36
 Defendant relies upon the testimony of Mr. Bohannon who said an ATP is generated by the state, physically produced by a private printer under contract with the state, and that the state issues the ATP. She thus concludes ATPs are the property of the state. Defendant ignores the remaining testimony of Mr. Bohannon that "the program is a federal program" in which the state acts as an agent of the United States Department of Agriculture, and that "the benefits all are federal funds." We conclude the evidence was sufficient for the purpose of conviction.
 
 V.
 
 37
 Finally, defendant contends the sentencing guidelines were not followed in sentencing. She cites several particulars.
 
 A. Amount of Loss
 
 38
 Defendant argues the district court incorrectly found the amount of the loss was $3,349, and she was only responsible for "under $1000 of the loss." She contends "Counts 1 and 3 involved a Travis Mason ATP that was fictitious; therefore, no loss was incurred." She also asserts Counts 9 and 11 involved an aggregate of $498 worth, and Count 7 "involved the Susan Casey ATP that was found in the Defendant's possession during the search on October 17th." Therefore, she argues, under U.S.S.G. § 2B1.1 she should receive only a one level increase because the loss was not more than $1,000.
 
 
 39
 Nonetheless, the court heard evidence at trial that the estimated loss in the food stamp fraud perpetrated by the defendant and her codefendants is in the amount of $40,000.00. Ms. Werner testified that she diverted three to four ATPs per day from June to September, 1989, and each was worth "generally greater than $250.00." The court made a factual finding, subject to the clearly erroneous test, that defendant, in collaboration with Ms. Hudson, was responsible for at least $3,349 in loss to the United States. In light of U.S.S.G. § 2B1.1, comment. (n. 3), which states the determination of loss need not be precise and may be inferred from reasonable information, we think the court's finding was not clearly erroneous.
 
 B. More than Minimal Planning
 
 40
 Defendant argues she was "involved only in the passive possession of the food coupons. There is no showing that she distributed them." Thus, she contends, she was involved only in minimal planning.
 
 
 41
 We examine the application of the § 2B1.1(b)(4) increase under a clearly erroneous standard. United States v. Williams, 966 F.2d 555 (10th Cir.1992). Repeated criminal acts committed by a defendant justify a finding that the defendant engaged in more than minimal planning. Id. The evidence in this case discloses repeated acts committed by Ms. Young negating any suggestion the court's finding was clearly erroneous.
 
 C. Adjustment for Firearms
 
 42
 Defendant argues that although guns were found in her bedroom they were not taken by the FBI "which indicates that the FBI itself did not consider them to have been used in the commission of any offense." She urges the guns were not mentioned at trial; therefore, the court should not have found they were used in connection to the offense.
 
 
 43
 The government replies, and we agree, the firearms were related to the cocaine charge, and "possession of a firearm during the commission of the offense establishes a presumption that the possession is connected to the offense." United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990). Moreover, defendant can only overcome the presumption if she can show it is clearly improbable that the weapon was connected to the offense. Id.; see also U.S.S.G. § 2D1.1, comment. (n. 3). Here the weapons were found with paraphernalia which is related to drug dealing. The guideline was correctly applied.
 
 D. The Multiple Count Adjustment
 
 44
 Ms. Young contends the counts of which she was convicted involve substantially the same harm; therefore, she should not have received an adjustment for multiple counts. We disagree. See United States v. Egson, 897 F.2d 353, 354 (8th Cir.1990) (The counts of illegal acquisition of food stamps and cocaine distribution involve two separate societal interests.).
 
 
 45
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 For example, defense counsel takes issue with the fact that the affidavit states Agent DeNunzio saw Ms. Hudson at the defendant's residence on October 4, 1989, but, in his testimony, he stated the date was October 10. Whether the inconsistency is the result of an outright misstatement, as defendant contends, or "incorrect testimony," as the government contends, is really of no moment. Although defendant argues Agent DeNunzio was the only person to have seen Ms. Hudson at Ms. Young's residence, the affidavit describes an occasion on October 12 on which Ms. Hudson "was observed by an FBI agent leaving the front porch of 2215 Northwest 49th Street [defendant's residence] and shortly thereafter returned to Werner's vehicle." Thus, if the October 4 observation in the affidavit attributed to Agent DeNunzio is invalidated, the October 12 observation provides a nexus between Ms. Hudson, the illegal transactions, and defendant's residence
 
 
 [2]
 Although the government contends the testimony was admissible under Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775 (1987), we do not agree. There is simply nothing in the record indicating the purpose of the objectionable statement was to establish the existence of the conspiracy, and the prosecutor did not advance this reason to the trial court in opposition to the objections