UNITED STATES of America, Plaintiff–Appellee,

v.

Heidi J. FOX, Defendant–Appellant.

No. 92–3266.

United States Court of Appeals, Tenth Circuit.

July 19, 1993.

---

**484**

Robert S. Streepy, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with him on the brief), Kansas City, KS, for plaintiff-appellee.

Michael L. Harris, Asst. Federal Public Defender (Charles D. Anderson, Federal Public Defender, with him on the brief), Kansas City, KS, for defendant-appellant.

Before BALDOCK, McWILLIAMS and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Ms. Heidi J. Fox, the Appellant, pled guilty to the unlawful and knowing use of an unauthorized credit card in violation of 18 U.S.C.A. § 1029(a)(2) (Supp.1993). In calculating Ms. Fox's sentence under the Sentencing Guidelines, her base offense level was increased two points because the harm exceeded $5,000, U.S.S.G. § 2F1.1(b)(1)(C), and increased an additional two points for abusing a position of trust, U.S.S.G. § 3B1.3. Ms. Fox appeals her sentence and we affirm.

## I. BACKGROUND

Ms. Fox was employed by Monogram Retailer Credit Services, Inc., (hereinafter "Monogram"), a company which provides credit services for Montgomery Ward retailers. Ms. Fox initially worked in an entry level position answering questions concerning credit card accounts and accessing account information through the computer. During her employment, Ms. Fox learned that Jack Warden, who previously held a credit card account with Montgomery Ward, had passed away in 1986 but his account was not closed and remained inactive. On September 2, 1989, Ms. Fox changed the name and address on the Warden credit account to that of her husband, Tim Fox. Ms. Fox also increased the credit limit on the account from $700 to $5,000 and issued new credit cards to her and her husband. Thereafter, from September 30, 1989, through March 1, 1990, both Mr. and Ms. Fox used the credit cards to purchase merchandise totaling $9,830.72 from Montgomery Ward. Ms. Fox purchased merchandise amounting to $1,621.20, and Mr. Fox purchased goods amounting to $8,209.52.

During the time they controlled the account, the Foxes apparently made only one $40.00 payment for the merchandise they acquired from Montgomery Ward. In order to conceal the delinquent status of the account Ms. Fox, who now occupied a managerial position, used other operators' computer terminals to advance the due date on the account by one month and lower the balance due by $1.00, thereby removing the flag code that would have shown the arrearage.

By superseding information, Ms. Fox was charged with violating 18 U.S.C.A. § 1029(a)(2) (Supp.1993).[1] Specifically, Ms.

---

1. Section 1029(a)(2) states:
   Whoever ... knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period ... shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

   The statute defines "access devices" as "any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value." 18 U.S.C.A. § 1029(e)(1) (Supp.1993).

Fox was charged with unlawfully and knowingly using an unauthorized Montgomery Ward credit card for the purpose of obtaining money, goods, services and other things of value in excess of $1,000.00, with an intent to defraud, all of which affected interstate commerce. Ms. Fox pled guilty to the charge and the matter was referred to the probation office for presentence investigation.

At sentencing, the trial court adopted the Presentence Report's computation of Ms. Fox's offense level under the Sentencing Guidelines. Pursuant to U.S.S.G. § 2F1.1(a), Ms. Fox was given a base offense level of six. The base offense level was enhanced two points under § 2F1.1(b)(1)(C) because Monogram's total loss was more than $5,000, and enhanced another two points under U.S.S.G. § 3B1.3 for abusing a position of trust. Ms. Fox's objections to these adjustments were overruled and she was sentenced to twelve months in prison. Ms. Fox appeals her sentence on the following grounds: (1) the trial court erred in including the credit card charges of her husband to calculate the monetary loss under § 2F1.1(b)(1)(C); and (2) the trial court erred in determining she abused a position of trust under § 3B1.3. For the reasons stated herein, we affirm.

## II. CALCULATION OF THE TOTAL LOSS

■ The first issue raised on appeal concerns the trial court's calculation of loss under the Sentencing Guidelines provision for fraud, U.S.S.G. § 2F1.1. Under § 2F1.1, a defendant's base offense level is increased depending upon the amount of loss the victim suffers.[2] The trial court determined the total loss to Monogram was $9,800.72 which, under § 2F1.1(b)(1)(C), resulted in an increase of two levels. Ms. Fox contends she was personally responsible for charging only $1,621.20 worth of merchandise and thus should receive no adjustment for excessive

loss. *See* U.S.S.G. § 2F1.1(b)(1)(A). It is Ms. Fox's contention that the balance of the purchases, namely $8,209.52, were charged by her husband who knew nothing of her fraudulent scheme, and whose charges, therefore, should not form the basis for an increase in her base offense level.

"We review a district court's determination of a U.S.S.G. § 2F1.1 loss under the clearly erroneous standard, but the factors a district court properly may consider [are] reviewed de novo." *United States v. Gallegos*, 975 F.2d 710, 712 (10th Cir.1992) (*citing United States v. Levine*, 970 F.2d 681, 689 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 289, 121 L.Ed.2d 214 (1992)). In this instance, Ms. Fox does not challenge the factual findings of the district court, but instead contends the trial court misapplied § 2F1.1 by including in its loss calculation charges made by her husband. We therefore review Ms. Fox's claim de novo.

The calculation of loss under U.S.S.G. § 2F1.1(b)(1) is labeled a specific offense characteristic. As such, the relevant conduct used to calculate the loss includes:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

....

(3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions....

U.S.S.G. § 1B1.3(a)(1), (3).

In overruling Ms. Fox's objection, the trial court recognized the applicability of § 1B1.3 and commented as follows:

(1) If the loss exceeded $2,000, increase the offense level as follows:

| | Increase in Level |
|---|---|
| (A) $2,000 or less | no increase |
| (B) More than $2,000 | add 1 |
| (C) More than $5,000 | add 2 |
| (D) More than $10,000 | add 3 |

---

2. U.S.S.G. § 2F1.1(b)(1) provides as follows:
 (b) Specific Offense Characteristics

Loss (Apply the Greatest)

I find that under 1B1.3(a)(1) of the guidelines, that the loss should include the amount arising from the husband's use of this credit card and that the defendant aided and abetted in his use of that card, and she is responsible for it.

Also, under 18 United States Code, Section 2(b), the defendant further would be responsible for it. The total amount of that loss, including her husband's use of the credit card, and even the Government has another argument I think that probably is valid under 1B1.3(a)(3), that the loss should include the husband's use of the credit card and that the defendant is responsible for it under the phrase that the harm resulted from the acts or omissions of the defendant. So, under all those grounds, the defendant's objection is overruled and the Court does adopt the reasoning and conclusion of the United States probation officer.

As indicated, the trial court gave three reasons for rejecting Ms. Fox's objection to the recommendation, (1) aiding and abetting under U.S.S.G. § 1B1.3(a)(1); (2) aiding and abetting under 18 U.S.C. § 2(b); and (3) U.S.S.G. § 1B1.3(a)(3). Ms. Fox asserts that she could not have aided and abetted her husband because he did not have knowledge of her scheme and thus he never committed a crime. In our view of the matter, we need not concern ourselves with whether or not Ms. Fox aided and abetted her husband because his purchases were clearly relevant conduct under § 1B1.3(a)(3).

Pursuant to § 1B1.3(a)(3), Mr. Fox's credit card charges constituted "harm" suffered by Monogram and the harm was a direct result of Ms. Fox's fraudulent acts. There is no doubt Mr. Fox's purchases constitute "harm" under § 1B1.3(a)(3). Likewise, it is readily apparent the "harm ... resulted from the acts" "committed ... by the defendant ... during the commission of the offense." U.S.S.G. § 1B1.3(a)(1) and (3). Ms. Fox reissued the credit card in her husband's name with the intent that he use the card and, as intended, Mr. Fox did in fact use the credit card to purchase merchandise at Montgomery Ward. The charges by Mr. Fox flowed naturally from the unauthorized reissue.

Therefore, Mr. Fox's purchases were relevant in calculating the total loss.

## III. ABUSE OF A POSITION OF TRUST

■ The second issue raised on appeal concerns the two level increase in Ms. Fox's base offense level for an abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. Section 3B1.3 provides for an upward adjustment of two levels if a "defendant abused a position of public or private trust." The commentary to § 3B1.3 states "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller." U.S.S.G. § 3B1.3 comment. (n. 1).

In overruling Ms. Fox's objection to the two levels adjustment, the district court stated:

[T]he Court finds by a preponderance of the evidence from the defendant's own admission, that it was not common knowledge that the amount due could be lowered by $1 each month and the delinquent status be removed and the payment due would be extended for one month and that she committed this at least on two occasions. That this is knowledge that she had as a result of her position there. That she did abuse her position of trust and that the two-level enhancement under Guideline 3B1.3 is appropriate and the court adopts that as a conclusion.

"Abuse of a position of trust is 'a sophisticated factual determination that will be affirmed unless clearly erroneous.'" *United States v. Williams*, 966 F.2d 555, 557 (10th Cir.1992) (quoting *United States v. Ehrlich*, 902 F.2d 327, 330 (5th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991)). Under the facts of this case, it is not obvious whether or not Ms. Fox abused a position of trust and therefore, we do not believe the district court's determination was clearly erroneous.

In *Williams*, this circuit set forth a nonexhaustive list of factors which other courts have considered in determining whether a defendant occupied a position of trust. *Williams*, 966 F.2d at 557. One of these factors, a "defendant's level of specialized knowledge," was relied upon by the district court. The record supports the court's findings as Ms. Fox was able to conceal the delinquent status of the credit card account by lowering the balance due by $1.00 and advancing the due date one month. This in turn removed a delinquency indicator from the account. The ability to remove delinquent status by employing these measures was admittedly not common knowledge among the employees.

Another factor listed in *Williams* is "the extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed." *Id.* This factor is also apparently present as Ms. Fox was able to use her position as a computer operator to find an existing, inactive credit card account, change it to her husband's name, increase the credit limit of the account, issue new credit cards, and then conceal the purchase of over $9,800 worth of merchandise. It is also relevant under *Williams* that Ms. Fox was in a supervisory position with greater responsibility at the time she concealed the delinquent status of the fraudulent account. *Id.* Under these facts, it was not unreasonable for the district court to find Ms. Fox's position dissimilar to "[a]n ordinary bank teller, who steals from the till and adjusts the records." *United States v. Chimal*, 976 F.2d 608, 613 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 715 (1993).

Ms. Fox counters that she was an entry level employee when she initially committed the fraud and there were numerous other computer operators in a similar position and with the same skills. Ms. Fox further asserts her knowledge of how to conceal an account's delinquent status was not dependent upon her subsequent managerial position. We acknowledge these as relevant facts in determining whether Ms. Fox abused a position of trust, *see Williams*, 966 F.2d at

557, and recognize that they cut the other way; however, as our review is for clear error and the district court's determination was reasonable and founded upon relevant facts, we **AFFIRM.**

McWILLIAMS, Senior Circuit Judge, concurs in part and dissents in part.

I dissent from that part of the majority opinion which holds that the district court was not clearly erroneous in raising Ms. Fox's base offense level by two levels on the ground that in committing the crime charged, Ms. Fox abused a position of private trust. In this regard, the majority opinion states that "[u]nder the facts of this case, it is not obvious whether or not Ms. Fox abused a position of trust and therefore, we do not believe the district court's determination was clearly erroneous." If that be the case, i.e., "it is not obvious ...," I would suggest that the record does not support the district court's determination that Ms. Fox abused a position of trust. In any event, the record indicates to me that Ms. Fox's job was low level and not a position involving a private trust. Her job was more like a bank teller than a bank trust officer.