UNITED STATES of America,
Plaintiff–Appellee,

v.

Walter Ray QUEEN, Defendant–
Appellant.

No. 92–1254.

United States Court of Appeals,
Tenth Circuit.

Sept. 13, 1993.

Rehearing Denied Oct. 15, 1993.

John Sbarbaro, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., and James P. Moran, Asst. U.S. Atty., on the brief), for plaintiff/appellee.

Warren R. Williamson, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), for defendant/appellant.

Before EBEL, Circuit Judge, RONEY, Senior Circuit Judge, and KELLY, Circuit Judge.*

* The Honorable Paul H. Roney, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

EBEL, Circuit Judge.

The defendant-appellant Walter Ray Queen was indicted on 16 counts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. He was charged with fraudulently obtaining money from investors by misrepresenting that he would invest their funds in precious metals and foreign currencies. Instead, it was charged, the defendant misappropriated the investors' money and converted their funds for his own purposes. The defendant pled guilty to one count of mail fraud and was sentenced to 30 months in prison. On appeal, he argues that the district court improperly enhanced his sentence under § 3B1.3 of the Sentencing Guidelines for abuse of a position of trust. We conclude that the district court properly enhanced the defendant's sentence because abuse of trust was not included in his base offense level and because the defendant accomplished his fraud by means of abuse of a position of trust even though he created the position for himself and even though he never intended to honor the trust. Accordingly, we affirm.

## FACTS

From March 6, 1989, to February 28, 1991, the defendant was the president of Queen Metals Exchange, Inc. ("QMX"), a corporation organized and existing under the laws of the State of Colorado. During the defendant's tenure as president, QMX mailed postcards to individuals throughout the United States advertising itself as a brokerage firm specializing in precious metal and currency accounts. The postcards stated that QMX received only a percentage of the net profit earned by an investor and did not charge commissions, brokerage fees, or turn fees. The postcards provided interested individuals with an application form and a telephone number for further information.

Those individuals who responded to the postcards were telephoned by representatives of QMX operating under the defendant's supervision. The QMX representatives falsely stated that investors' money would be used to purchase precious metals and currencies, that investors historically received a return of between 43% and 89% a year, that QMX guaranteed that investors would not lose money during the first year, and that QMX did not engage in futures and options trading. Following these telephone calls, QMX mailed to prospective investors a promotional literature packet. The packet repeated many of the false representations made in the telephone calls and contained a false record of the defendant's prior trading history.

Interested investors sent money to QMX through the United States mail and by means of wire transfers to QMX's bank accounts. Contrary to QMX's representations, little of this money was used to purchase precious metals and currencies. Rather, a majority of investors' funds were either dissipated in the commodity futures market or used for the defendant's own personal expenses. In order to conceal its fraudulent activities, QMX regularly sent false profit statements to its investors. The total loss suffered by these investors as a result of QMX's misconduct was $1,097,680.00.

On March 6, 1992, the defendant was indicted on 16 counts of mail and wire fraud, in violation of §§ 1341 and 1343. The defendant entered into a plea agreement with the government, whereby he agreed to plead guilty to one count of mail fraud in exchange for the government's dismissal of the remaining charges and its recommendation that the defendant be sentenced to 24 months imprisonment under the Sentencing Guidelines based on an offense level of 17. This recommended offense level did not include any enhancement for abuse of a position of trust.[1]

1. The government's recommended offense level of 17 was calculated as follows: The base level offense for mail fraud was determined to be 6 under § 2F1.1(a). See U.S.S.G. § 2F1.1(a). The base offense level was then enhanced twice under the special offense characteristics section of this guideline: an eleven-point enhancement was added because the defendant's offense involved a loss of more than $800,000, see U.S.S.G. § 2F1.1(b)(1)(L), and a two-point enhancement was added because the defendant's offense involved more than minimal planning, see U.S.S.G. § 2F1.1(b)(2). Finally, the defendant's offense level was decreased two points for acceptance of responsibility. See U.S.S.G. § 3E1.1.

At the sentencing hearing, the district court rejected the government's suggested offense level. Following the probation department's recommendation in the presentence report, the court concluded that an additional two-level enhancement was appropriate for abuse of a position of trust because of "the existence of a fiduciary relationship between Mr. Queen and [his] investors." Accordingly, the court sentenced the defendant to 30 months imprisonment based on an offense level of 19. Tr. at 17 (Vol. III). The court also sentenced the defendant to 3 years supervised release and ordered him to pay restitution in the amount of $1,097,680.00. The defendant now appeals to this court, arguing that the district court's two-level enhancement for abuse of a position of trust was improper.

## DISCUSSION

Under the Sentencing Guidelines, a defendant's offense level is subject to adjustment based on his or her role in the offense of conviction. Guideline 3B1.3 provides for a two-level enhancement if, in the course of committing an offense, the defendant abused a position of public or private trust. This guideline states:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

U.S.S.G. § 3B1.3, (Nov. 1, 1991 version). As the language of § 3B1.3 indicates, an enhancement for abuse of trust is appropriate only if 1) the defendant occupied a position of trust, 2) the defendant abused this position in a manner that significantly facilitated his or her offense, and 3) abuse of trust is not included in the base level offense or specific offense characteristics pertaining to the defendant's crime.

In the instant case, the district court concluded that the defendant's offense involved an abuse of position of trust and applied the two-level enhancement permitted by § 3B1.3. The defendant argues that this two-level enhancement was inappropriate for two reasons. First, he argues that abuse of trust is included in his base offense level. Second, he argues that he did not occupy a position of trust. We will address each of these contentions in turn.

### A. Whether Abuse of Trust is Included in the Defendant's Base Offense Level.

■ Initially, the defendant contends that the district court improperly enhanced his sentence for abuse of a position of trust because abuse of trust was involved in his base offense level. According to the defendant, abuse of trust is an inherent element of the offense of mail fraud. The question of whether abuse of trust is included in the defendant's base offense level presents a question of law which we review de novo. *United States v. Levy*, 992 F.2d 1081, 1084 (10th Cir.1993).

This court has twice before considered whether an enhancement under § 3B1.3 was precluded because abuse of trust was included in the defendant's base offense level. In *United States v. Chimal*, 976 F.2d 608, 613–14 (10th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1331, 122 L.Ed.2d 715 (1993), we upheld an abuse of trust enhancement for a defendant convicted of embezzling from an Indian tribe in violation of 18 U.S.C. § 1163. In reaching our conclusion, we focused on "the elements of the underlying offense." *Id.* We reasoned that "[a]lthough embezzlement by definition involves an abuse of trust, embezzlement by someone in a significant position of trust warrants the enhancement when the position of trust substantially facilitated the commission or concealment of the crime." *Id.* Subsequently, in *United States v. Levy*, 992 F.2d 1081, 1084 (10th Cir.1993), we applied a different analysis to the issue. There, we stated that whether an enhancement for abuse of a position of trust was

appropriate depended on the "base offense level and specific offense characteristics assigned by the guidelines to the crime of conviction" and not on "the elements of the offense itself." *Id.* In that case a bankruptcy trustee was convicted of embezzlement in violation of 18 U.S.C. § 153 and was given a two-point enhancement for abuse of a position of trust. We looked not to the underlying statutory offense, but rather to the guideline base offense level and specific offense characteristics. Because abuse of a position of trust was not a factor in the guideline base offense level or specific offense characteristics, we concluded that the defendant could receive a two point enhancement for abuse of trust under U.S.S.G. § 3B1.3. We acknowledged that our analysis differed from that which we employed in *Chimal*, but noted that the two cases nevertheless reached similar results. *See id.* at n. 4.

This divergence between *Chimal* and *Levy* is indicative of the general division characterizing the federal courts with respect to the meaning of the term "base offense level" in the context of § 3B1.3. *Compare United States v. Georgiadis*, 933 F.2d 1219, 1225 (3rd Cir.1991) (looking to the elements underlying the defendant's offense) *and United States v. McElroy*, 910 F.2d 1016, 1027–28 (2d Cir.1990) (same) *with United States v. Ajiboye*, 961 F.2d 892, 895 n. 4 (9th Cir.1992) (looking to the elements common to all the crimes covered by the applicable guideline) *and United States v. Lange*, 918 F.2d 707, 710 (8th Cir.1990) (same).

Ultimately, we need not choose between *Chimal* or *Levy*. Under either approach, the defendant's base offense level in the instant case clearly did not involve an abuse of trust. The guideline for fraud is § 2F1.1, and it does not include any factoring for abuse of a position of trust. A similar conclusion is reached if reference is made to the elements underlying the defendant's specific offense. In order to convict an individual for mail fraud, the government need only prove that the defendant used the mails in furtherance of a scheme to defraud. *United States v. Kelley*, 929 F.2d 582, 585 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991). The government need

not prove that the fraud constituted an abuse of a position of trust. Accordingly, we hold that the defendant's base offense level did not include an abuse of trust and therefore that the district court properly considered § 3B1.3 in sentencing the defendant.

B. *Whether the Defendant Occupied a Position of Trust*

The defendant argues that the district court improperly enhanced his sentence for abuse of a position of trust because he did not occupy a position of trust. According to the defendant, § 3B1.3 only applies to individuals who occupy real positions of employment within a business or organization that give rise to relationships of trust. In the instant case, the defendant argues that he did not occupy a real position of trust because his asserted status as an investment advisor/broker was part of the fraudulent misrepresentations he made to his victims. Whether a defendant occupied a position of trust requires a "factual determination that will be affirmed unless clearly erroneous." *United States v. Fox*, 999 F.2d 483, 486 (10th Cir.1993) (quoting *United States v. Williams*, 966 F.2d 555, 557 (10th Cir.1992)).

Neither § 3B1.3 nor the application notes accompanying this guideline define what is meant by a "position of trust." *United States v. Smaw*, 993 F.2d 902, 905 (D.C.Cir. 1993). The application notes offer only the following remark:

> The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

U.S.S.G. § 3B1.3, Application Note 1.

In *United States v. Williams*, 966 F.2d 555, 557 (10th Cir.1992), we set forth the following factors for determining whether a particular position constituted a position of trust:

> [T]he extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed; defendant's

duties as compared to those of other employees; defendant's level of specialized knowledge; defendant's level of authority in the position; and the level of public trust.

Based on these factors, we concluded in *Williams* that the defendant's position as a military pay account technician constituted a position of trust, since the defendant had unique access to the pay accounts which "allowed him to circumvent the Center's checks and balances." *Id.* at 558.

There is no question that, had the defendant actually been an investment advisor/broker as he represented to his victims, he would have occupied a position of trust under the *Williams* criteria. An investment advisor/broker is typically an individual who is entrusted with the discretionary authority to manage the assets of his or her clients through the application of specialized knowledge. Such a person is well positioned to commit a difficult-to-detect wrong. This is especially true where the investment advisor/broker is his own employer, as Queen was in the instant case, and is therefore subject to no internal supervision or authority.[2]

Although Queen held himself out to be equivalent to an investment advisor/broker, he contends that he never legitimately occupied such a position. The defendant argues that an individual who merely pretends to occupy a position of trust is not subject to § 3B1.3 because this section only applies to individuals who actually occupy formal positions of employment.

However, here the defendant held himself out to be at least the equivalent of an investment advisor/broker and he provided objective indicia to his victims that he was occupying such a role. The victims accepted his offer to assume a position of trust with regard to them. Under these circumstances a position of trust between the defendant and his victims was thereby created even though the defendant may have intended from the very beginning to abuse that position.

■ In *Williams*, we indicated that a primary concern of § 3B1.3 is with penalizing defendants who take advantage of a position that provides them with the freedom to commit a difficult-to-detect wrong. *See also Fox*, 999 F.2d 483, 486; *United States v. Lieberman*, 971 F.2d 989, 993 (3rd Cir.1992) (" [T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong.") (quoting *United States v. Hill*, 915 F.2d 502, 506 (9th Cir.1990)). This focus suggests that the question of whether an individual occupies a position of trust should be addressed from the perspective of the victim. *See United States v. Booth*, 996 F.2d 1395, 1396 (2d Cir.1993); *United States v. Castagnet*, 936 F.2d 57, 62 (2d Cir.1991); *United States v. Hill*, 915 F.2d 502, 506 n. 3 (9th Cir.1990). A defendant who convinces a third party that he occupies a formal position of trust may possess the same freedom to commit a difficult-to-detect crime as an individual who actually possesses such a position. Indeed, in many situations the absence of any institutional constraints may provide a defendant who merely pretends to occupy a formal position of trust with even greater freedom to commit a difficult-to-detect wrong than his or her legitimate counterpart.[3]

---

2. Queen argues that because he was his own employer, he would not qualify as being in a position of trust under *Williams* even if he had been a legitimate investment advisor/broker. Queen points to the second *Williams* criterion—requiring a comparison of the defendant's duties to those of other employees—as evidence that § 3B1.3 only applies to employees. As we recently noted in *Fox*, however, the *Williams* criteria constitute a non-exhaustive list of criteria which must be adapted to the particular facts of each case. *See Fox*, 999 F.2d 483, 486. In the instant case, Queen was alleged to have abused the trust of his customers, not that of his employer. In light of this fact, it would lead to a truly absurd result to conclude that because Queen was the president of QMX rather than merely an employee that he was exempt from any enhancement under § 3B1.3 for abuse of a position of trust. *See United States v. Zamarripa*, 905 F.2d 337, 340 (10th Cir.1990) (concluding that a self-employed babysitter occupied a position of trust).

3. Not every misuse of a fiduciary relationship will justify the enhancement under § 3B1.3. *United States v. Smaw*, 993 F.2d 902 (D.C.Cir.

By virtue of the statements that QMX representatives made to defendant's victims over the phone, the subsequent promotional materials these individuals received in the mail, and the false profit statements they were issued once they decided to invest, the defendant's victims were led objectively to believe that the defendant occupied a formal position of trust with regard to them. As a result of this belief, the defendant clearly enjoyed the same freedom to commit a difficult-to-detect crime that he would have possessed had he actually been a legitimate investment advisor/broker. The defendant was, in fact, entrusted with the discretionary authority to manage his victims' assets as he saw fit. Accordingly, we believe the defendant may be considered to have actually been an investment advisor/broker for purposes of § 3B1.3.

We therefore AFFIRM the district court's enhancement of the defendant's sentence under § 3B1.3 for abuse of a position of trust.

1993). To invoke § 3B1.3, the defendant must either occupy a formal *position* of trust or must create sufficient indicia that he occupies such a position of trust that he should be held accountable as if he did occupy such a position.