52 F.3d 339
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne Edward NULL, a/k/a Edward Wayne Noll, Jr., a/k/a Wayne
Eddie Noel, Defendant-Appellant.
 No. 94-6284.
 United States Court of Appeals, Tenth Circuit.
 April 11, 1995.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, BRIGHT,[2] and BALDOCK, Circuit Judges.
 
 
 1
 Wayne Edward Null protests the eighteen-month sentence he received for pleading guilty to giving false information to obtain a social security number in violation of 42 U.S.C. 408(7)(A); and causing a federally insured bank to submit a report containing material misstatements of fact in violation of 31 U.S.C. 5324(2). Triggering the incorrect calculation of his sentence under U.S.S.G. 2F1.1, he contends, is the inclusion as relevant conduct of the loss on his home mortgage. The district court properly found Null's manipulation of his home mortgage was part of the same scheme of criminal conduct underlying the counts of conviction. We, therefore, affirm.
 
 
 2
 Because the parties are well-versed in the underlying facts, we eschew their recitation here unless they are necessary to the principle on review. At issue is the mortgage for $199,750 executed in 1984 on Null's home at 2201 Dawn Marie Road in Oklahoma City. In July 1988, Null transferred title to this property to Hazel Bigbee, a longtime friend. The following month, however, Null ceased making payments on the mortgage, telling the Brumbaugh & Fulton Mortgage Company, working part-time, he earned only about $800 a month. After internal review and consultation with its private mortgage insurer, Brumbaugh commenced foreclosure proceedings and, in June 1989, sold the property at a sheriff's sale for $85,453.85. The purchaser was Null's business associate who used money Null provided. Throughout this time, Null continued to live in the Dawn Marie residence.
 
 
 3
 The Presentence Report (PSR) included the Dawn Marie transaction as relevant conduct occurring during the time that Null submitted false applications for social security numbers used to open bank accounts at, for example, the Bank of Oklahoma, Home Federal Savings and Loan, and Texas First Securities Corporation. From approximately 1988 to 1990, Null deposited over $500,000 into these accounts. That is, during the time Null represented to creditors he could not meet his debt obligations, he similarly defaulted on his home mortgage, forcing the property into foreclosure, and then repurchasing it with his own money through a straw buyer.
 
 
 4
 Null, however, objected to the PSR's including the Dawn Marie mortgage transaction as relevant conduct to calculate his base offense level. After a hearing on this and other objections to the PSR, the district court stated,
 
 
 5
 The objection with respect to the Dawn Marie transaction is overruled, and this it just seems to me is a classic example of conduct intended to disguise assets so as to remove them from the ability of a creditor to collect....
 
 
 6
 When we came down to the point where Mr. Null declined to make additional payments, he was more financially distressed than he previously had been, but the evidence is clear that he did have assets that were disguised and hidden under aliases and phony and bogus SSN's....
 
 
 7
 ....
 
 
 8
 There need not be a finding of specific illegality in Mr. Null's taking the course of action that he did.... That could possibly be shown to be fraudulent, it could possibly be shown to be an offense under Federal law because of the use of a false Social Security number, but that doesn't make any difference. We're talking about relevant conduct here, and the termination of payments and the buy-in at $85,000 is connected with and in relation to and supplementary to the use of the bogus SSN's for disguising assets or, as has been referred here several times, "squirreling away" assets.
 
 
 9
 (emphasis and italics added).
 
 
 10
 By including the $139,000 loss on the home mortgage and adjusting other loss figures, the district court increased the base offense level of six, U.S.S.G. 2F1.1(a), by seven levels to reflect a loss of more than $120,000. U.S.S.G. 2F1.1(b)(1)(H). From the resulting guideline range of twelve to eighteen months, the district court sentenced Null to eighteen months' imprisonment. The court also imposed a $3,000 fine and term of supervised release.
 
 
 11
 On appeal, Null contends the evidence of loss underpinning the district court's guideline range lacked sufficient indicia of reliability and was not established by a preponderance. What Null actually argues, however, is that nothing involved in the foreclosure related to the fraud. That is, there was no cognizable loss. Indeed, during oral argument, when asked whether $139,000 or $85,000 was the correct figure for the mortgage loss, Null's counsel responded that no amount of loss attributed to the mortgage should have been included. Instead, turning the tables, Null argued any fault by commission or omission was attributable to Brumbaugh, which made no inquiry about his assets, sought no deficiency judgment, and simply chose an in rem judgment on the property in a civil foreclosure proceeding. Null, thus, transformed his contention about the factual support for the calculation of loss under 2F1.1 into a challenge to its very character as relevant conduct under 1B1.3.
 
 
 12
 Absent an error of law, we review the district court's findings of relevant conduct for clear error. "Only after the government has met its burden of establishing, by a preponderance of the evidence, a sufficient nexus between the [extraneous] conduct and the offense of conviction,' may the sentencing court, in its sound discretion, make a relevant conduct' adjustment." United States v. Williams, 10 F.3d 910, 913 (1st Cir.1993) (citing United States v. Sklar, 920 F.2d 107, 110 (1st Cir.1990) (emphasis added)).
 
 
 13
 The legal parameter for our review is the definition of relevant conduct found in 1B1.3(a)(1)(A):
 
 
 14
 all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ...
 
 
 15
 ...
 
 
 16
 that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
 
 
 17
 In this case, the "acts" of the offense of conviction are substantially connected by a common purpose of evading creditors by hiding assets. The "harm" was the same whether the victim was Shearson Lehman or Brumbaugh.
 
 
 18
 To excise the Dawn Marie transaction from this "common purpose" by clothing it as a civil fortuity caused by the downturn in the Oklahoma economy then strains credulity and tortures the obvious intent of each of Null's acts. The government established by a preponderance the Dawn Marie mortgage transaction bore a sufficient nexus to the fraud Null perpetrated on other creditors through the device of hiding assets under false social security numbers and was properly characterized as relevant conduct used to increase Null's base offense level.
 
 
 19
 Moreover, in the context of relevant criminal conduct, we have stated that the "harm" suffered by a victim as a direct result of fraudulent acts "result[s] from the acts committed ... by the defendant ... during the commission of the offense." United States v. Fox, 999 F.2d 483, 486 (10th Cir.1993) (citing 1B1.3). The mortgage transaction occurred at the same time that Null procured and used false social security numbers to open bank accounts into which he placed assets he told Brumbaugh he lacked.[3] The mortgage transaction bears the same indicia of subterfuge as Null's offense conduct.
 
 
 20
 The district court's correctly reaching this conclusion merits affirmance. We therefore AFFIRM.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Myron H. Bright, Senior Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [3]
 It further strains credulity that in the face of Null's fraudulent scheme, he would have told the mortgagee, if asked, what and where his assets were placed